1809.

Lessee of GRATZ *against* EWALT.

*Pittsburg,*
*Thursday,*
September 7.

APPEAL from the decision of the late Judge *Smith*, at a Circuit Court for *Allegheny* in *November* 1805.

The case reported by his Honour, so far as it is material to the point decided here, was shortly this: The lessor of the plaintiff claimed the premises in the ejectment, under a deed from the sheriff of *Allegheny* county, the same having been sold under a judgment obtained in 1774 against *George Croghan*, to whom it had been granted with other land by the *Indians* before the year 1761, and who was also the proprietor of an application of the 1st *April* 1769, for 1500 acres including the land in dispute.

The defendant was likewise a purchaser at sheriff's sale. On the 25th *January* 1771, a certain *Jonathan Plummer* mortgaged the premises to one *Henry Heath*. In 1783 *Heath* obtained a judgment upon the mortgage; and upon a *levari facias* in the same year, the land was sold to the defendant. To shew the title of *Plummer* the mortgagor, testimony was introduced to prove, that as to this part of *Croghan's Indian* grant and application, he was a trustee for *Plummer*, who had settled on the land in 1761, and was entitled to the equitable estate by contract with *Croghan;* and for this purpose, the deposition of *Plummer* himself was offered in evidence. It was opposed upon the ground of interest, principally in consequence of *Plummer's* covenant in the mortgage, under the words "*grant, bargain, sell*," which were said to be a general warranty, of which the purchaser at sheriff's sale might avail himself; but his Honour admitted the evidence, reserving the point; and finally charged the jury, that if they were satisfied that *Croghan* was a trustee for *Plummer*, their verdict should be for the defendant, as it was clear law that an equitable estate might be mortgaged. The jury found for the defendant; and Judge *Smith*, being perfectly satisfied with the verdict, overruled a motion for a new trial which was made as well upon the reserved point,

The words "*grant, bargain, sell,*" do not, under the act of 1715, amount to a general warranty, but merely to a covenant, that the grantor has not done any act, nor created any incumbrance, whereby the estate granted by him, may be defeated; and therefore is a good witness to support a title derived under a mortgage from him containing those words.

Lessee
of
GRATZ
v.
EWALT.

as upon the general objection that the verdict was against law and evidence.

The appeal was argued at last *September* term.

*Woods* for the plaintiff made two points. 1. That by the evidence, it appeared that *Plummer* had no estate to mortgage. 2. That *Plummer* was interested to support the defendant's title, inasmuch as he had mortgaged by the words " *grant, bargain, sell,*" which under the act of 1715 were a general warranty.

The *first* point involved the evidence at large, which it is not material to detail.

Upon the *second* he argued, that if every phrase in the sixth section of the act of 1715, 1 *St. Laws* 111, was allowed its due weight, which was a maxim in the construction of statutes, it must necessarily follow that the words were a covenant against all the world. By the act, they are an express covenant in the first instance, that the grantor is seized of an " *indefeasible estate in fee simple,*" words which contain no restriction or exception, and which cannot without absurdity admit of any, because whatever the exception is, it must destroy the whole of the covenant. The second member of the covenant is, " freed from all incumbrances " done or suffered by the grantor;" and the third, " as also " for quiet enjoyment against the grantor his heirs and as- " signs." To couple the second member with the first, and thereby to make it a simple covenant against the acts of the grantor, does not qualify the first, but entirely destroys it; for it is no longer a covenant that the grantor has an indefeasible fee simple, but merely that he has done nothing to defeat it. Neither is the second included in the first, which, if it were the case, might furnish a plausible argument for qualifying the one by the other. There may be incumbrances which do not operate as a defeasance of the fee simple, for which it was proper to furnish the grantee with a writ of covenant; and if in any case the two branches of the covenant can perform different offices, the rule of construction before referred to, must compel the court to treat them as distinct covenants. Certainly the opinion has prevailed, that a general warranty was intended by the law; and a contrary

decision may very much affect the value if not the security of titles. The law was intended to produce extensive benefit; but to derive from it no relief except against the acts of the grantor, is to make it give the grantee very little that he would not have had without it. If it is a general warranty, then as it runs with the land, the purchaser at sheriff's sale may upon the defeat of his title, sue the covenantor, and of course the latter was plainly interested to prevent an eviction.

*Ross* for the defendant argued, that although the section was ambiguously framed, yet the relation in which the first two clauses of the covenant stood to each other, and the terms of the second clause, shewed their connexion to be inevitable, and that the whole was but a single covenant. The second clause is not complete in itself, but relates to something which goes before. The antecedent is the estate in fee simple. Unless this is joined with the succeeding phrase, there is nothing which the grantor covenants to be freed from incumbrances done or suffered by himself; and if it is joined, then it is a single covenant that the estate in fee simple is free from incumbrances by him. To argue that there is one covenant that the grantor is seized of an indefeasible estate in fee simple, and another that he is seized of an estate in fee simple freed from all incumbrances by himself, is therefore to make the words first a covenant against all the world, and then against an individual, which is contrary to the plaintiff's own rule of construction, since it entirely destroys the use of the second clause. The language of the third clause is a further argument for the connexion and likewise for the restriction of the first two. It is limited in its objects; " as also for quiet enjoyment against the " *grantor his heirs and assigns.*" To confine the covenant for quiet enjoyment after a general warranty, seems absurd; but after a special warranty, is perfectly correct. In fact the course of the legislature has been, after starting with terms which by themselves might have a very general operation, to follow them with terms which could consist with nothing but a special warranty. If however the covenant amounts to a general warranty, still *Plummer* had no interest. The mortgage was merely a pledge as security; and at the sheriff's sale nothing was sold to the purchaser but *Plummer's* interest

in the land. There is no instance in which an action has been brought against a defendant, in consequence of the defect of his title to land sold under execution. He sells nothing, he conveys nothing himself; the whole is taken from him and passed away by the hand of the law.

*Cur. adv. vult.*

Upon this day the judges delivered their opinions.

TILGHMAN C. J. As to the *first* point. I feel no difficulty. The defendant offered evidence of weight, to shew that *George Croghan* was a trustee for *Plummer;* and the judge who tried the cause, left the matter to the jury on the evidence, and was well satisfied with the verdict. There can be no reason for a new trial upon that ground.

The second point requires more consideration. It is singular that the construction of words, concerning which there has been a difference of opinion, and which have been introduced into thousands of deeds since the year 1715, should never have been settled by a judicial decision. But such is the case. I am well informed that, at the time of our revolution, it was the opinion of some gentlemen of eminence at the bar, that the words " grant, bargain, and sell," created a general warranty, while others of equal character entertained a contrary opinion. It was this diversity of sentiment which I suppose (as I mentioned in the case of *Bender* v. *Fromberger*, 4 *Dall.* 440.) induced the conveyancers of *Philadelphia* to introduce the clause of special warranty, which is very generally found in deeds in that city. I am aware that in the *Lessee of Balliot* v. *Bowman*, before the late C. J. *Shippen* and Judge *Smith* in the Circuit Court of *Northampton* county, *May* 1802, this very point was brought before the court, on an objection to the competency of a witness who had conveyed the land in dispute, by a deed containing the words " grant, bargain, sell;" and according to Judge *Smith's* note of that case, the court said that those words created a warranty " only against the grantor and " those claiming under him, or against any act done by the " grantor;" but in order to avoid all difficulty a release was executed to the witness, so that I do not consider the point as having been solemnly decided.

I will consider the act of assembly, then, supposing the question to be undecided. It is enacted " that in all deeds to " be recorded in pursuance of that act, whereby an estate of " inheritance in fee simple should be granted to the grantee " and his heirs, the words *grant, bargain, sell,* shall be ad- " judged an express covenant to the grantee his heirs and as- " signs, *to wit,* that the grantor was seized of an indefeasible " estate in fee simple, freed from incumbrances done or suf- " fered from the grantor, (excepting the rents and services " due to the lord of the fee) as also for quiet enjoyment " against the grantor his heirs and assigns, unless limited " by express words contained in such deed." The meaning is not clearly expressed; but I take it to be a covenant that the grantor had done no act, nor created any incumbrance, whereby the estate granted by him might be defeated; that the estate was indefeasible as to any act of the grantor. For if it was intended that the covenant should be, that the grantor was seized of an estate absolutely indefeasible, it was im- proper to add the subsequent words " freed from incum- " brances done or suffered by him;" these words instead of adding strength, would only serve to weaken what went before. The words, " seized of an indefeasible estate in fee " simple," are to be considered therefore, not as standing alone, but in connexion with the words next following, " freed from incumbrances done or suffered from the " grantor." I am the more convinced that this was the in- tention of the legislature, by comparing the expressions in this act, with the 30th section of the *statute 6th Ann. ch. 35.* which contains a provision on the same subject, and was evidently in the eye of the persons who framed our law. The *British* statute makes use of more words, but the intention is more clearly expressed. It declares that the words *grant, bar- gain and sell,* shall amount to a covenant, that the bargainor, *notwithstanding any act done by him,* was, at the time of the execution of the deed, seized of an indefeasible estate in fee simple &c. Our law seems intended to express the substance of the *British* statute in fewer words, and has fallen into a de- gree of obscurity, which is often the consequence of attempt- ing brevity. I can conceive no good reason why our legislature should have wished to carry this implied warranty farther than the *British* statute did; because it has bad effects to an-

1809.

Lessee
of
GRATZ
*v.*
EWALT.

nex to words an arbitrary meaning far more extensive than their usual import, and which must be unknown to all but, professional men. It might be very well to guard against secret acts of the grantor, with which none but himself and those interested in keeping the secret, could be acquainted. As for any further warranty, if it was intended by the parties, it was best to leave them to the usual manner of expressing it in plain terms.

These are my ideas of the construction of this act of assembly, divested of all authority from the opinion of others. But although we are without the authority of an adjudged case, we have the opinions of Chief Justice *Shippen* and Judge *Smith*, to which I pay great respect, in the case which I have mentioned. Upon the whole of this case, I am of opinion that the Circuit Court was right in rejecting the motion for a new trial.

YEATES J. The first reason assigned for this appeal, is, that the deposition of *Jonathan Plummer* was admitted in evidence to the jury. He was examined on the 29th *May* 1798, by the commissioners appointed on a bill to perpetuate testimony. Having been in the peaceable and quiet possession of the lands in controversy since 1761, and made many valuable improvements thereon, he mortgaged the same to *Henry Heath* on the 25th *January* 1771, to secure the payment of 114*l.*·4*s.* 10*d. Virginia* currency, with lawful interest. This mortgage, containing the words *grant, bargain, sell*, to the said *Henry Heath* and his heirs, in the usual form, was proved at a *Virginia* court on the 25th *August* 1777, when that state claimed and exercised jurisdiction in the western parts of *Pennsylvania*, and was recorded on the same day. It is objected that the witness was interested at the time of his examination, under sec. 6. of the act " for acknowledging " and recording of deeds," passed in 1715; and that having granted an estate in fee to the mortgagee, the technical words used therein operated in law, as an express covenant, that he had a good and indefeasible right in the lands conveyed by way of security; and if therefore the sheriff's vendee should happen to be evicted by an elder and better title, that he would have his remedy over against the mortgagor.

The words of this section are very similar to those used in section 30 of the stat. 6 *Ann. c.* 35. which are as follow: " In

" all deeds of bargain and sale, hereafter inrolled in pursu-
" ance of this act, whereby any estate of inheritance in fee
" simple is limited to the bargainee and his heirs, the words
" *grant, bargain and sell*, shall amount to, and be construed
" and adjudged in all courts of judicature, to be express
" covenants to the bargainee his heirs and assigns, from the
" bargainor for himself, his heirs, executors and administra-
" tors, that the bargainor, *notwithstanding any act done by*
" *him*, was at the time of the execution of such deed, seized of
" the hereditaments and premises thereby granted, bargained
" and sold, of an indefeasible estate in fee simple, free from
" all incumbrances, (rents and services due to the lord of
" the fee only excepted) and for quiet enjoyment thereof
" against the bargainor his heirs and assigns, and all claiming
" under him, unless the same shall be restrained by express
" particular words contained in such deed; and that the
" bargainee, his heirs, executors, administrators, and as-
" signs respectively, shall and may in any action to be
" brought assign a breach, or breaches thereupon, as they
" might do in case such covenants were expressly inserted
" in such bargain and sale."

There are some variances between the words of the two
sections, the consideration whereof seems to me at present
to be immaterial: but I have no doubt of this section of this
act being taken from the statute, though the statute is more
verbose.

I have not been fortunate enough to discover any decision
on this branch of the *British* statute, as to evidence. In
*Man* v. *Ward* (a) Lord *Hardwicke* says the very words
*grant and convey* imply a warranty, and covenant for quiet
enjoyment at law; and therefore one could not be examined
as a witness to overturn and invalidate the right and title he
had granted. In *Browning* v. *Wright* (b) Lord *Eldon* lays it
down, that the words *grant, bargain, sell, enfeoff, and con-
firm*, import a covenant in law. But in a late case of *Frost et
al.* v. *Raymond* (c) determined in the Supreme Court of
*New York* in 1804, it is abundantly shewn, that though the
words *grant and enfeoff* amount to such covenant in an
estate for years, yet to apply them to an estate in fee, is op-
posed to the whole stream of the book authorities. In that

(a) 3 *Atk.* 228.        (b) 2 *Bos. & Pul.* 21.        (c) 2 *Caines* 188.

case it was adjudged, that the words *grant, bargain, sell, alien, and confirm,* did not imply a covenant of warranty in a deed, conveying lands in fee simple. The word *give* amounts to an implied warranty for the life of the feoffor. And so of the word *exchange* in partition. I thoroughly agree with Judge *Livingston,* that in practice, every purchaser of lands, who intends to have recourse in case of eviction to the former proprietor, takes care to have inserted in the instrument of conveyance, the necessary covenants for that purpose, thereby ascertaining the precise extent of his liability. In conveyances of real estate, there must always be danger in implying any thing, that is not stipulated in clear and precise terms. This is the safest way of determining the extent of a grantor's responsibility.

But it is said that the legislature have imparted a degree of efficacy to the words *grant, bargain, sell,* which they did not possess at common law; and that in grants of estates in fee simple, " they shall be adjudged an express covenant that " the grantor was seized of an indefeasible estate in fee " simple, freed from incumbrances done or suffered from " the grantor, as also for quiet enjoyment against the grantor " his heirs and assigns, unless limited by express words con- " tained in the deed." The sentence is read, as if the words *freed from incumbrances &c.* were a distinct covenant from the words preceding it, enlarging the liability of the grantor. But the natural, grammatical sense of the section is, that the expressions *freed from incumbrances &c.,* qualify and restrict the operation of the words going before, and the latter clause of quiet enjoyment being confined to the acts of the *grantor his heirs and assigns,* strongly fortifies this construction. In other words, the provision was intended as a covenant on the part of the grantor, that he had not previously incumbered the lands, and that neither he, his heirs, or assigns, should molest or disturb the grantee. It was remarked during the argument, that a different construction had generally prevailed, which it might be highly inconvenient now to unsettle. We therefore postponed giving any decision on the subject at the last term, in order to have time to consult the elder counsel at the bar. I have personally made inquiry of many of those gentlemen, both in the city and country, and they have uniformly asserted, that as far

as their experience has gone, the clause in question has re-ceived no other construction than a covenant of special war-ranty, freed from incumbrances; that scriveners have gener-ally used the words *grant, bargain, sell,* as mere expressions of course; and that though sometimes releases have been executed at bar, previously to offering such grantors as wit-nesses, it has been done to save time, and preclude all pretext of dispute. I have likewise seen the notes of a trial in the Circuit Court of *Northampton* county, on the 19th *May* 1802, before the late Chief Justice *Shippen* and Judge *Smith,* between the *lessee of Stephen Balliot* and *Bernard Bowman,* wherein *Jacob Seyberling,* through whom the defendants claimed by divers mesne conveyances, was offered as a wit-ness to support the title of the lands, and his competence was objected to on the part of the plaintiff, on the ground of the words *grant, bargain, sell,* being used in his conveyance; but the objection was overruled without difficulty; and the then Chief Justice declared, that those words within his experience had never been deemed to amount to more than a covenant against the vendor and his acts, and those claim-ing under him. I am therefore of opinion that the deposition of *Jonathan Plummer* was properly received in evidence, and that the exception went to his credibility, not to his competence.

The other grounds of appeal are, that the verdict for the defendants was against law and evidence. It appears from Judge *Smith's* statement of the evidence, that *George Croghan* claimed a large body of land under an *Indian* grant, and per-mitted *Jonathan Plummer* to take possession of a specified parcel thereof, to be paid for at a future day, agreeably to the judgment of arbitrators, according to its value in an uncul-tivated state, when *Croghan* should obtain the title. The possession was obtained by *Plummer* in 1761, with the per-mission of Col. *Henry Boquet,* the commanding officer to the westward, and he made considerable improvements thereon. *Croghan* afterwards, on the 1st *April* 1769, pro-cured a special order for 1500 acres of land on the river *Ohio,* which recited that six families had lived thereon, im-proving the same since 1762; and in pursuance thereof surveys were made in the month of *June* following, one of which included the lands in dispute. In 1765 *Croghan* acted

1809.

Lessee
of
GRATZ
*v.*
EWALT.

1809.

Lessee
of
GRATZ
*v.*
EWALT.

as the agent of *Plummer* in leasing the land, and paid him the rent. In 1771 *Plummer* mortgaged the premises before stated to *Henry Heath* with *the knowledge and approbation* of *Croghan*, and afterwards sold the same lands to *Croghan* for 300*l. subject* to the equitable claim of the mortgagee, which *Croghan* agreed to pay, but no written conveyance was executed. In fact *Croghan* retained in his hands a part of the purchase money in order to pay the mortgage. A judgment was obtained in *July* term 1783 on this mortgage in *Westmoreland* county, and the lands were sold under a *levari facias* to the defendant.

The lessor of the plaintiff claimed under a sale made by the sheriff in 1801 under sundry judgments obtained by *Croghan's* creditors against him in 1774.

The question submitted to the jury on the whole evidence was, whether *Plummer* had such an interest in the lands as he could mortgage, or whether the entire title was in *Croghan*. The credibility of the parol testimony was wholly submitted to the jury; and they were instructed that if they were satisfied that *Plummer* was not the tenant of *Croghan*, and that the latter was trustee of the former, by engaging to take out the legal right for him, that the defendant ought to prevail under all the circumstances of the case; because if the equitable title was in *Plummer* on the 25 *January* 1771 and previous thereto, the judgments against *Croghan* in 1774 could not affect the lands. But if they found that both the legal and equitable title were always in *Croghan*, then *Plummer* could have no estate whatever in the lands, which he could mortgage, and consequently in such case, the plaintiff would be entitled to recover. The jury upon the whole matter have found a verdict for the defendant, and the judge who tried the cause has declared his perfect satisfaction therewith. I can see no cause of dissatisfaction with the charge or the finding of the jury, and on the whole, I am of opinion that the judgment of the Circuit Court should be affirmed.

BRACKENRIDGE J. Having been of counsel in this cause, I did not sit upon the trial, though on the circuit with Judge *Smith;* but as it is now decided, I may express my concurrence. When on the circuit with the late Chief Justice *Shippen,* I conversed with him with regard to the construction of the act of assembly; and I understood, that since he

had had any knowledge of the law in *Pennsylvania*, the construction of the act had been, that the covenant in question was a special warranty.