ROEBUCK v. DUPREY.

1. Where an estate of freehold was granted by the words, *dedi et concessi*, or *dedi* only, according to the English common law a *warranty of title* was implied. *Quere*—Does the word, "*give*," employed in a deed of bargain and sale, import such a warranty in this State.

2. The words, "grant, bargain, sell," do not, under the 20th section of the act of 1803, " respecting conveyances," import an absolute or general covenant of seisin, against incumbrances, and for quiet enjoyment; but amount to a covenant only, against acts done or suffered by the grantor and his heirs.

3. That section, in declaring the effect of the words, " grant, bargain, sell," when employed in a conveyance in fee simple "to the grantor or his heirs," is evidently misprinted—the term, "*grantor*," must be construed to mean *grantee*.

4. Although a deed contains express covenants, yet other covenants may be implied ; but the latter can only operate where they are consistent with the former.

THE defendant in error declared against the plaintiff, in the Circuit Court of Jefferson, in covenant upon a deed of the following tenor: "To all to whom these presents shall come, greeting. Know ye, that I, George Roebuck, for and in consideration of eight hundred dollars received to my full satisfaction, of John W. Dupuy, of the county of Jefferson and State of Alabama, do give, grant, bargain, sell and confirm, unto the said Dupuy, and to his heirs and assigns, the following described tract or parcel of land, situated in the county aforesaid, in township eighteen, in range three west, viz : the northwest quarter of section one. To have and to hold the above granted and bargained premises, with the appurtenances thereunto belonging, unto him, the said Dupuy, and to his heirs and assigns forever, and to his and their own proper use and behoof; and also, I, the said Roebuck, do, for myself, my heirs and assigns, covenant with the said Dupuy and his heirs and assigns, that at and until the ensealing of these presents, I am well seized of the premises as a good and indefeasible estate in fee simple, and have good right to bargain and sell the same ; and furthermore, I, the said Roebuck, do, by these presents, bind myself, my heirs and assigns forever, to warrant and defend the above granted premises unto him, the said Dupuy, and to

his heirs and assigns, against myself, my heirs and assigns, and all and every other person or persons claiming the same or any part thereof. In witness whereof," &c.

The plaintiff then averred, " that the said defendant did then and there, by virtue of the legal operation and effect of the words, grant, bargain and sell, contained in said deed, covenant to and with the said plaintiff, his heirs and assigns, that he, the said defendant, was seized of an indefeasible estate in fee simple in the said premises, freed from incumbrances done, or suffered from the said defendant."

The plaintiff alleges as a breach of covenant, that at the time of the execution of the deed, the "premises were not free from incumbrances done and suffered from the defendant; but that one John Brown, the grantor of the defendant, before that time, to wit: on the first day of March, 1821, by deed duly executed, acknowledged and recorded, had mortgaged the said premises to the Connecticut Asylum for the education and instruction of deaf and dumb persons, *otherwise called* The American Asylum at Hartford, for the education and instruction of the deaf and dumb—for securing the payment of three several notes or bonds obligatory, of even date, with said mortgage, each for the payment of one hundred and ten dollars, payable to Wm. Ely as attorney and agent of the aforesaid Asylum, or his order, with interest from date, at the Huntsville Bank— the first, on or before the first day of March, eighteen hundred and twenty-two; the second, on or before the first day of March, eighteen hundred and twenty-three; and the last, on or before the first day of March, eighteen hundred and twenty-four. Which said notes, or bonds obligatory, together with the interest on the same, were due and unpaid at the date of the said deed from the said defendant to the said plaintiff, as aforesaid; and so continued due and unpaid until the thirty-first day of March, in the year one thousand eight hundred and thirty-eight, when the same were paid and discharged by the said plaintiff. And therefore said plaintiff saith, the said defendant his covenant," &c.

The defendant demurred to the declaration; and his demurrer being overruled, he pleaded four pleas; to the latter of which the plaintiff demurred; and his demurrer was sustained.

Roebuck v. Dupuy.

These pleas need not be particularly noticed, as they raise the same questions of law that are presented by the demurrer to the declaration.

The cause was then submitted to the jury on the issues of fact; and a verdict being returned for the plaintiff, judgment was rendered accordingly; to reverse which, the defendant has sued a writ of error to this' Court.

CRABB & COCHRAN, for the plaintiff in error.

PECK, for the defendant.

COLLIER, C. J.—It was argued for the plaintiff in error, that his demurrer to the declaration should have been sustained by the Circuit Court—

*First:* Because the word, "give," does not imply a covenant against incumbrances.

*Sacond:* Because the terms, "grant, bargain, sell," only imply a covenant (if any) against acts done, or suffered by the grantor or his heirs.

*Third:* That inasmuch as the deed declared on contains express covenants, there can be none implied by law.

*First:* Until the statute of *quia emptores terraruma* bolished the practice of subinfeudations, lands might be granted to be held, either of the grantor himself, or of the chief lord of the fee. If they were granted by the word, *"dedi,"* to be held of the *grantor himself,* there, without any other warranty, the feoffor and his heirs were bound to warrant the title of the grantee. Such is the declaration of the statute, (De Bigamis, ch. 6.) which, in this respect, Lord Coke says, is merely in affirmance of the common law. The waranty in this instance, was a consequence of the tenure which subsisted between the grantor and the grantee. But where lands were granted to be held of the chief lord of fee, there the tenancy was of the chief lord; still the grantor was supposed to be bound by his own gift; and the word, "give," imported a warranty by himself personally, but did not extend to his heirs. [Hargraves & Butler's Notes to Coke upon Littleton, 384; n. a. 2 Hilliard's Ab. 365.

Thus stood the case at common law; and it.is unnecessary to inquire what changes were effected by the statute of *quia emptores*, since none of the British statutes are of force *proprio vigore* in this State.

Though the words *dedi et concessi*, or *dedi* only, did make a warranty, when an estate of freehold was granted; yet the word, *concessi*, or *demisi et concessi*, did not thus operate. [Sheppard's Touchstone 184; 2 Hilliard's Ab. 370-1; Coke Lit. 384 and note a.; Rickets v. Dickens, 1 Murphy's Rep. 343; 4 Kent's Com. 474; Frost v. Raymond, 2 Caine's Rep. 188.] And it has even been doubted in several of the States, whether the word, *"dedi,"* at the present day, imports a warranty. [Deakins v. Hollis, 7 Gill & J. Rep. 311; Allen v. Sayward, 5 Green.'s Rep. 227.] But it is unnecessary to examine this point further, since it is clear, that the word, "give," does not imply a covenant against incumbrances, &c.; but at most, a warranty of title, a covenant for the breach of which, the declaration is not at all adapted. The covenant of warranty, (in the language of a learned author,) "looks forward, and in it the grantor covenants, that he will warrant and defend the granted premises, and every part thereof; and that if the grantee shall be evicted by title paramount, the grantor will indemnify him and make good his loss occasioned by such title." The grantee, therefore, must be so evicted or expelled, before there can be any breach of this covenant; and, consequently, before any right of action can accrue. (Dane's Ab. ch. 115, A. 8, S. 1; Twambly v. Henley, 4 Mass. Rep. 442; Mitchell v. Warner, 5 Conn. Rep. 497; Clarke v. McAnulty, 3 S. & Rawles' Rep. 364; Vanderkarr v. Vanderkarr, 11 Johns. Rep. 122; Stewart v. Drake, 4 Hals. Rep. 139; Innes v. Agnew, 1 Ham. Rep. 389; Simpson v. Hawkins, 1 Dana's Rep. 306. See also 4 Mass. Rep. 352; 9 Cow. Rep. 157; 15 Pick. Rep. 149; 2 Wheat. Rep. 62, note c.

Whether the word "give," employed in a deed of bargain and sale, imports a warranty in this State, is a question not presented by the record, and we consequently decline its decision.

*Second:* The 20th section of the act of 1803, "respecting conveyances," enacts, that "in all deeds to be recorded in pursuance of this (that) act, whereby any estate of inheritance in

fee simple, shall hereafter be limited to the grantor, or his heirs, the words, grant, bargain, sell, shall be adjudged an express covenant to the grantee, his heirs and assigns, to wit : that the grantor was seized of an indefeasible estate in fee simple, freed from incumbrances, done or suffered from the grantor, (except the rents and services that may be rendered,) as also for quiet enjoyment against the grantor, his heirs and assigns ; unless limited in express words contained in such deed : and the grantee, his heirs, executors, administrators and assigns, may in any action assign breaches, as if such covenants were expressly inserted : *Provided always,* That this law shall not extend to leases at rack rent, or to leases not exceeding one and twenty years, where the actual possession goes with the lease." (Aik. Dig. 94.) This section is almost a literal transcript of a law of Pennsylvania enacted in 1715, and that enactment was doubtless suggested by the 30th section of the statute, 6 Ann, ch. 35, to which it is very similar in its terms. [See Lessee of Gratz v. Ewalt, 2 Binney's Rep. 99–100–101.]

The question arising upon the construction of this section is, do the words, "grant, bargain, sell," import an absolute or general covenant of seisin, against incumbrances and for quiet enjoyment ; or do they amount to a covenant only, against acts done or suffered by the grantor and his heirs. Though much circumlocution is employed by the Legislature, so as to obscure their meaning ; yet we think the most natural interpretation, and the only one that consists with the established rules of construction, requires that the grantor should be held to covenant, that the estate undertaken to be conveyed was indefeasible as to any act of himself. The opposite conclusion can only be attained upon the hypothesis, that the second clause of the section provides for two distinct covenants, viz : 1. That the grantor stipulates with the grantee as against all the world, that "he is seized of an indefeasible estate in fee simple." 2. That he is seized of such an estate freed from incumbrances done or suffered by himself. If this idea were well founded, the second covenant would be wholly inoperative, as it would be embraced by the first, which is much more extensive. But this clause must be regarded as a unit, the latter words limiting and controlling those which precede them.

The fitness of the thing, as well as the punctuation employed, very clearly shew this.

Again : the third clause serves further to shew, that the second must be restricted in the manner we have stated. It is limited in its objects in covenanting "for quiet enjoyment against the grantor, his heirs and assigns." Why thus restrict the covenant for quiet enjoyment, if it was intended by the first part of the second clause to make the words, " grant, bargain, sell," import a general warranty? It would destroy the harmony of the section; but all its parts operate together upon the construction we have given it.

This precise question arose in the case of Lessee of Gratz v. Ewalt, 2 Binney's Rep. 95, upon the interpretation of the Pennsylvania statute. In that case, the Court held, that words, "grant, bargain, sell," did not, under the act of that State, amount to a general warranty, but merely to a covenant that the grantor has not done any act, nor created any incumbrance, whereby the estate granted by him may be defeated.

But it is argued by the defendant in error, that the case of Lessee of Gratz v. Ewalt has been overruled by the later decision of Funk v the Ex'rs. of Bechtoll, 11 Sergt. & R. Rep. 109. In that case, the land conveyed, had been imcumbered previous to the sale, by the grantor, the defendant's testator; and one of the questions raised was, whether the words, " grant, bargain and sell," contained in the deed, were inconsistent with, or restrained by, an express covenant of special warranty. In considering this question, the learned Judge, who delivered the opinion of the Court, said: "The special covenant is by no means inconsistent with this general covenant. The implied covenant is not controlled by the special one—the effect of the words, "grant, bargain and sell," can only be limited " by express words contained in the deed." Such is the direct provision of the act. There is no express limitation; and to imply one, would be. contrary to natural justice, and the intention of the parties. It is an unqualified covenant against incumbrances done and suffered by the grantor, or those under whom he claims; nor can it make any difference, that the mortgage was recorded, and the plaintiff had constructive notice," at the time he received the deed,

that the estate conveyed was thus incumbered. We are at a loss in what manner to understand this language. Though it seems to lay down the law differently from what it was ascertained to be in the case cited from Binney; yet as no reference is made to that case, in which the construction of the statute is elaborately examined by three very eminent Judges, we cannot believe that it was intended to overrule it. And this conclusion is strengthened by a note, which we have seen, of Seitzinger v. Weaver, 1 Rawle's Rep. 377. See 1 Metc. & P's. Dig. 677, sec. 70. Mr. Hilliard, in his abridgement of the law of real property, cites that case, as also Lessee of Gratz v. Ewalt, to show, that under the act of Pennsylvania the words, *"grant, bargain, sell,"* do not not create a general warranty, but only a covenant against the acts of the grantor himself. (2 vol. 371.) The case itself is not accessible to us.

Chancellor Kent cites, with approbation, the case of Lessee of Gratz v. Ewalt, which he considers as furnishing a correct exposition, not only of the Pennsylvania, but of our own statute also. He says: "Upon this construction, the words of the statute are divested of all dangerous tendency; and they amount to no more than did the provision in the English statute of 6 Anne, c. 35, s. 30, upon the same words. It may not be very inconvenient, that those granting words should imply a covenant against the secret acts of the grantor; but beyond that point, there is great danger of imposition upon the ignorant and the unwary, if any covenant be implied that is not stipulated in clear and precise terms. (4 vol. Com.)

We have not thought it deserving serious consideration, whether the effect given to the words, "grant, bargain, sell," by the first clause of the section, apply only to a case in which a fee simple estate "shall be limited to the *grantor,* or his heirs." A reference to the statutes of Pennsylvania and Delaware, as well as the British statute already referred to, clearly indicate that the word, *"grantor,"* has by mistake been printed for *"grantee;"* and to give effect to the legislative will, we must construe the section as if the latter word was there.

*Third:* In respect to the last point made, we do not think it well taken. It cannot be admitted, that there can be no covenants in law, or implied covenants, in a deed which contains

express covenants. There may be implied, as well as expressed covenants in the same deed; but the former can only operate where they are consistent with the latter. (Gates v. Caldwell's ex'rs., 7 Mass. Rep. 68; Kent v. Welch, 7 Johns. Rep. 258; Blair v. Hardin, 1 Marsh. Rep. 232.; Sumner v. Williams, 8 Mass. Rep. 201; Vanderkarr v. Vanderkarr, 11 John. Rep. 122.) But it is unnecessary to consider whether, in the case before us, the covenants of both descriptions can have their full effect and operation; since it has been shown, that the declaration is fatally defective upon the first and second grounds urged by the plaintiff in error. We need not inquire, whether the Circuit Court rightfully sustained the demurrer to the pleas, as the demurrer to the declaration brings up the same question of law.

We have only to add, that the judgment of the Circuit Court is reversed; and the cause remanded, if desired by the defendant in error.