W.V. McRaney, Sr.; W.V. McRaney, Jr.; and Michael V. McRaney, individually and as custodian for Jillian Paige McRaney, a minor (hereinafter collectively referred to as "McRaney"), sued David F. Steele, Harvell Hines Steele, and J. Hudson Hines (hereinafter collectively referred to as "Steele"), alleging that Steele had wrongfully cut timber on property owned by McRaney.
McRaney and Steele are adjoining landowners. Steele contracted with a corporation, Hines, Steele and Steele, Inc., to cut timber on an eight-acre tract of real property that Steele thought it owned. McRaney claims that it has a deed to a portion of the eight-acre tract and that it owns the remainder of the eight-acre tract by adverse possession.
McRaney's five-count complaint alleged trespass, conversion, negligent hiring and supervision, wanton hiring and supervision, and an action to quiet title to the disputed property. Steele generally denied the allegations of the complaint and counterclaimed, also seeking to quiet title to the property. Steele filed a third-party complaint against Mark A. Roberts, James H. Sherer, Zachary M. Hutchens, John Thomas Sexton, and William D. Sudduth (hereinafter collectively referred to as "Roberts"), the grantors from whom Steele had acquired the property. Steele's third-party complaint alleged a breach by Roberts of the covenant of seisin, the covenant against encumbrances, and the covenant of quiet enjoyment.
Roberts answered Steele's third-party complaint and filed a third-party complaint against Regions Bank, Marie Hotz and John Stewart, as trustees of the Simpson Foundation (hereinafter collectively referred to as "Regions"), the grantors from whom Roberts had acquired the property it conveyed to Steele. Roberts's third-party complaint alleged the same breach-of-covenant claims against its grantor, Regions, that Steele alleged against its grantor, Roberts.
Regions filed a third-party complaint against Goodwyn, Mills 
Cawood, Inc. (hereinafter referred to as "the surveyors"), alleging that the surveyors had surveyed its property in 1986, and that they had negligently included in that survey property not owned by Regions. Regions further alleged that the legal description of the property that appeared in the deeds from Regions to Roberts and from Roberts to Steele had been based on the incorrect survey.
The surveyors moved for a judgment on the pleadings, arguing that the statutory limitations period had expired on any action arising out of an alleged breach of contract or negligence in surveying the property. Regions moved for a summary judgment on the ground that Roberts's claims against it were barred by the 10-year statute of limitations applicable to actions for breach of covenants in a deed. Roberts moved for a summary judgment against Steele on two grounds: (1) that the covenants contained in the statutory warranty deeds from Roberts to Steele were limited to actions "done or suffered" during the time that Roberts allegedly held title to the disputed property and, Roberts argued, it did nothing to cause a defect in the title during the time of its purported ownership; and (2) that the deeds from Roberts to Steele contained certain language disclaiming any covenants.
The trial court entered a judgment on the pleadings in favor of the surveyors because it appeared from the face of Regions' third-party complaint that the action was barred by the statute of limitations. On Steele's third-party complaint against Roberts, the trial court entered a summary judgment for Roberts. On Roberts's third-party complaint against Regions, the trial court entered a summary *Page 1117 
judgment for Regions (but on a ground other than the statute-of-limitations ground argued by Regions). On McRaney's complaint against Steele, the trial court entered a summary judgment in favor of all three Steele defendants on count 3 (alleging negligent hiring and supervision) and count 4 (alleging wanton hiring and supervision). As to counts 1 and 2 of McRaney's complaint (alleging trespass and conversion), the trial court entered a summary judgment in favor of two of the Steele defendants — David F. Steele and Harvell Hines Steele. After entry of these judgments, the following claims remained to be adjudicated by the trial court: counts 1 and 2 of McRaney's complaint against the third Steele defendant — J. Hudson Hines; count 5 of McRaney's complaint against all three Steele defendants; and Steele's counterclaim against McRaney. The last two claims both sought to quiet title to the disputed property.
The trial court entered an order making its judgments final pursuant to Rule 54(b), Ala.R.Civ.P. Steele appealed to the Alabama Supreme Court. Roberts cross-appealed. The supreme court transferred the appeals to this court pursuant to § 12-2-7(6), Ala. Code 1975.
On appeal, Steele argues (1) that the trial court erred in determining that the covenants contained in the statutory warranty deeds from Roberts to Steele were limited to defects in title that occurred during the time that Roberts allegedly held title to the disputed property, and (2) that the deeds from Roberts to Steele contained certain language disclaiming any covenants. On cross-appeal, Roberts contends that Regions' liability to Roberts is contingent on Roberts's liability to Steele. Therefore, Roberts argues, if this court reverses the summary judgment for Roberts on Steele's third-party complaint, then it must also reverse the summary judgment for Regions on Roberts's third-party complaint. Because we affirm as to the appeal, it is unnecessary to address the issue raised on the cross-appeal.
Under Rule 56(c)(3), Ala.R.Civ.P., a trial court is authorized to enter a summary judgment when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Because the pertinent facts in this case are essentially undisputed, we review the trial court's application of the law to those facts to determine whether the defendants and third-party defendants were entitled to judgments as a matter of law. See Carpenter v. Davis, 688 So.2d 256, 258
(Ala. 1997). We review the trial court's judgments under a de novo standard. See Hipps v. Lauderdale County Bd. of Educ., 631 So.2d 1023,1025 (Ala.Civ.App. 1993).
 I. Disputed property for which McRaney claims record title
The disputed property is that part of the northeast quarter of Section 24, Township 12 North, Range 11 East, lying north of Cedar Creek ("the northeast quarter") and the fractional northwest quarter of Section 24, Township 12 North, Range 11 East, lying north of Cedar Creek ("the northwest quarter"). McRaney has a deed to the northeast quarter; McRaney claims ownership of the northwest quarter by adverse possession. In this section we will discuss the issues that pertain to the disputed property in the northeast quarter.
It is undisputed that all deeds relevant to this appeal are statutory warranty deeds containing the words "grant, *Page 1118 
bargain, and sell."[1]
 "In all conveyances of estates in fee where the words `grant, bargain, and sell' appear, the deed is construed by statute as containing the following covenants of title: a covenant of seizin; a covenant against encumbrances; and a covenant of quiet enjoyment. [Ala.] Code 1975, § 35-4-271."
St. Paul Title Ins. Corp. v. Owen, 452 So.2d 482, 485 (Ala. 1984). Seegenerally Jesse P. Evans III, Alabama Property Rights and Remedies § 4.4(a) (2d ed. 1998). Section 35-4-271, Ala. Code 1975, provides:
 "In all conveyances of estates in fee, the words `grant,' `bargain,' `sell' or either of them, must be construed, unless it otherwise clearly appears from the conveyance, an express covenant to the grantee, his heirs and assigns, that the grantor was seised of an indefeasible estate in fee simple, free from incumbrances done or suffered by the grantor, except the rents and services that are reserved; and also for quiet enjoyment against the grantor, his heirs and assigns, unless limited by the express words of such conveyance; and the grantee, his heirs, personal representatives, and assigns may, in any action, assign breaches, as if such covenants were expressly inserted."
It is undisputed that the defect in Steele's record title was created by the erroneous legal description of the property in the deed from Regions to Roberts. The same erroneous legal description was contained in the deed from Roberts to Steele.
Relying on St. Paul Title Insurance Corp. v. Owen, supra, the trial court determined that Roberts was not liable to Steele for breach of the implied covenants listed in § 35-4-271 because the defect in the title to the property Roberts conveyed to Steele existed when Roberts acquired the property from its grantor, Regions. In Owen, a title insurance company, as subrogee of the remote grantee's mortgagee, sued the original grantor, alleging a breach of the express covenants in its warranty deed, and also sued subsequent grantors, alleging a breach of the implied covenants in their statutory warranty deed. The Alabama Supreme Court held that the title insurance company could recover from the original grantor for breach of the express covenants contained in the warranty deed, but the title insurance company could not recover from the subsequent grantors on the covenants contained in their statutory warranty deed. The court stated:
 "James and Cheryl Owen [the subsequent grantors] conveyed their complete, albeit non-existent interest, in the subject property to Dennis Carlisle [the remote grantee-mortgagor] by statutory warranty deed. By so doing, they merely warranted that they had not conveyed title to anyone else; that they had not allowed the property to become encumbered while they held purported title; and that they had not caused or suffered anyone to do anything that would interfere with the property's quiet enjoyment by the grantee, the grantee's heirs or assigns. Because the record indicates that James and Cheryl did nothing to affect the purported title they conveyed, they did not breach any of the covenants of title contained in the statutory warranty deed delivered to Dennis Carlisle and are therefore not liable to the appellant, as subrogee of [Dennis Carlisle's mortgagee]." *Page 1119 
Owen, 452 So.2d at 486. The court explained:
 "Unlike the express covenants of title found in a general warranty deed, . . . the implied covenants of title contained in a statutory warranty deed are more limited in effect.
 "In the early case of Heflin v. Phillips, 96 Ala. 561, 11 So. 729 (1892), the Court noted: `In construing this statute [predecessor of 35-4-271] this Court declared that the words "grant, bargain, sell" do not import an absolute general covenant of seizin against incumbrances and for quiet enjoyment, but that they amount to a covenant only against acts done or suffered by the grantor and his heirs.' 96 Ala. at 562, 11 So. 730 (Emphasis added [in Owen]). See also Griffin v. Reynolds, 17 Ala. 198 (1850). More than twenty years after Heflin, the Court remarked: `All authorities hold that the covenants implied by statute are limited to the acts of the grantor and those claiming under him, and do not extend to defects of title anterior to the conveyance to him.' Mackintosh v. Stewart, 181 Ala. 328, 333, 61 So. 956, 958
(1913)."
Owen, 452 So.2d at 485-86 (alterations added in Owen). See also Evans,Alabama Property Rights § 4.4(a) at 88 (stating that "[the]. . . covenants [implied under § 35-4-271] do not obligate the grantor for defects or encumbrances arising or created by some person or entity other than the grantor; any defects or encumbrances arising or created prior to the acquisition by the grantor are excluded from the covenant").
In the present case, Roberts acquired purported title to the disputed property by statutory warranty deed from Regions. Roberts subsequently conveyed the described property by statutory warranty deed to Steele. The defect in the title Roberts conveyed to Steele, i.e., the erroneous legal description of the property that was contained in Regions' deed to Roberts, was clearly anterior to Roberts's conveyance to Steele.
Steele argues that Owen is distinguishable because it did not involve the liability of a grantor to his immediate grantee. Instead, Steele points out, Owen dealt with whether a subrogee of the grantee's mortgagee could recover against the grantor. That distinction has no legal significance in light of Owen's clear holding that there is no recovery, under the implied covenants in a statutory warranty deed, against a grantor who did nothing while holding the purported title to affect the title he conveyed.
Steele argues that the trial court wrongly applied Owen because, Steele contends, § 35-4-271 should be construed so that only the covenant against encumbrances — and not the covenant of seisin — is limited to defects in title "done or suffered by the grantor." That argument was made and rejected nearly 200 years ago in Gratz' Lessee v.Ewalt, 2 Bin. 95 (Pa. 1809), a Pennsylvania decision interpreting a Pennsylvania statute that was the progenitor of the Alabama statute, and later in Roebuck v. Duprey, 2 Ala. 535 (1841), an early Alabama decision construing the predecessor to § 35-4-271. In Roebuck, the Alabama Supreme Court, noting that the Alabama statute was "almost a literal transcript of a law of Pennsylvania enacted in 1715," 2 Ala. at 539, stated:
 "The question arising upon the construction of this section is, do the words, `grant, bargain, sell,' import an absolute or general covenant of seisin, against incumbrances and for quiet enjoyment; or do they amount to a covenant only, against acts done or suffered by the grantor and his heirs. Though much *Page 1120 
circumlocution is employed by the Legislature, so as to obscure their meaning; yet we think the most natural interpretation, and the only one that consists with the established rules of construction, requires that the grantor should be held to covenant, that the estate undertaken to be conveyed was indefeasible as to any act of himself, The opposite conclusion can only be attained upon the hypothesis, that the second clause of the section provides for two distinct covenants, viz: 1. That the grantor stipulates with the grantee as against all the world, that `he is seized of an indefeasible estate in fee simple.' 2. That he is seized of such an estate freed from incumbrances done or suffered by himself. If this idea were well founded, the second covenant would be wholly inoperative, as it would be embraced by the first, which is much more extensive. But this clause must be regarded as a unit, the latter words limiting and controlling those which precede them. The fitness of the thing, as well as the punctuation employed, very clearly [show] this.
 "Again: the third clause serves further to [show], that the second must be restricted in the manner we have stated. It is limited in its objects in covenanting `for quiet enjoyment against the grantor, his heirs and assigns.' Why thus restrict the covenant for quiet enjoyment, if it was intended by the first part of the second clause to make the words, `grant, bargain, sell,' import a general warranty? It would destroy the harmony of the section; but all its parts operate together upon the construction we have given it."
Roebuck, 2 Ala. at 539-40. The court continued:
 "This precise question arose in the case of Lessee of Gratz v. Ewalt, 2 Bin. 95 [(Pa. 1809)], upon the interpretation of the Pennsylvania statute. In that case, the Court held, that words, `grant, bargain, sell,' did not, under the act of that State, amount to a general warranty, but merely to a covenant that the grantor has not done any act, nor created any incumbrance, whereby the estate granted by him may be defeated."
2 Ala. at 540.
In Griffin v. Reynolds, 17 Ala. 198 (1850), Reynolds sued Griffin, his grantor, alleging a breach of the covenant created by the words "grant, bargain and sell" in a statutory warranty deed. The supreme court stated:
 "[A]lthough [Griffin] might not have had the title to the lands at the time he executed his deed [to Reynolds], and the title may have then been in another who still holds it, yet it does not follow that he (whoever he may be) acquired the title to the premises by the act of the grantor [Griffin]. To show a breach of this covenant it must appear that the title has failed from the acts of the grantor. If this be not shown, the covenant is not shown to be broken, although the grantee may have been evicted; for non constat he may have been evicted on a title which was not created by the act of the grantor nor derived from him."
Griffin, 17 Ala. at 200 (emphasis added). The court held that "[t]he act of 1803, respecting conveyances, creates a covenant by the use of the words 'grant, bargain, and sell,' but this covenant extends to acts done by the grantor or his heirs only." 17 Ala. at 199. See also Parker v.Parker, 93 Ala. 80, 82, 9 So. 426, 427 (1890) (stating that if "[t]he imperfection in, or incumbrance upon the title to the land conveyed to [the grantee], was not done or suffered by . . . his grantor. . . . [but] by . . . the former owner," then there is no breach of *Page 1121 
the covenants in a statutory warranty deed).
We conclude that, as to the disputed property in the northeast quarter, the trial court correctly entered a summary judgment for Roberts on Steele's third-party complaint alleging breach of the covenants in its statutory warranty deed. The trial court also correctly entered a summary judgment for Regions on Roberts's third-party complaint. The trial court correctly determined that Regions' statute-of-limitations defense was unavailing and that Regions could avoid liability to Roberts only if Roberts had no liability to Steele.
Roberts acquired title from Regions in 1989. Section 6-2-33(2), Ala. Code 1975, provides a 10-year statutory limitations period for "[a]ctions for the recovery of lands, tenements or hereditaments." The covenant of seisin and the covenant against encumbrances are present covenants, meaning that they do not run with the land and are not enforceable against remote grantors. See Evans, Alabama Property Rights § 4.4(b)(i) and (iii). The statutory limitations period regarding a breach of the covenant of seisin and the covenant against encumbrances begins to run at the time of the conveyance, when the deed is executed and delivered. See Scofield v. Cheatham, 485 So.2d 722 (Ala. 1986); Cook v.Exchange Realty Mortg. Co., 374 So.2d 1339 (Ala. 1979); Evans,Alabama Property Rights § 4.4(b)(iii). Roberts filed its third-party complaint against Regions in 2001, more than 10 years after the deed conveying the property from Regions to Roberts was executed and delivered. Therefore, the statute of limitations respecting a breach of the covenants of seisin and against encumbrances had already expired when Roberts filed its third-party action against Regions.
The covenant of quiet enjoyment, however, is an in futuro covenant,see St. Paul Title Ins. Corp. v. Owen, 452 So.2d at 485, that runs with the land and is enforceable against a remote grantor, see Self v. Petty,469 So.2d 568 (Ala. 1985). See generally Evans, Alabama Property Rights
§ 4.4(b)(iv). The statute of limitations with respect to an action for breach of the covenant of quiet enjoyment does not begin to run until there has been an eviction, actual or constructive. See St. Paul TitleIns. Corp. v. Owen, 452 So.2d at 485. "A constructive eviction may occur where there exists an outstanding title which could be asserted against the party in possession in a judicial proceeding." Evans, AlabamaProperty Rights § 4. 4(b)(iv) at 92. In the present case, there was no eviction until McRaney sued Steele, see St. Paul Title Ins. Corp. v.Owen, 452 So.2d at 485. Therefore, the statutory limitations period did not bar Roberts's third-party complaint against Regions.
As the trial court pointed out, there are two ways in which Regions could be liable for a breach of the covenant of quiet enjoyment. First, Regions could be responsible for a breach of the covenant of quiet enjoyment because the erroneous legal description in its deed to Roberts (and in Roberts's deed to Steele) resulted in Steele's constructive eviction. Steele, however, made no claim against Regions. The only claim against Regions was by Roberts. As the trial court correctly determined, Roberts must be liable to Steele in order for Regions to be liable to Roberts. As we have already discussed, Roberts had no liability to Steele with regard to the disputed property in the northeast quarter because the alleged defect in the title was anterior to Roberts's conveyance to Steele.
The second basis for determining that Regions could be liable for a breach of the *Page 1122 
covenant of quiet enjoyment concerns the disputed property in the northwest quarter that McRaney claims by adverse possession.
 II. Disputed property that McRaney claims by adverse possession
McRaney did not plead or prove when its alleged adverse possession of the disputed property in the northwest quarter ripened into title. In order to avoid liability in a breach-of-covenant action, however, it is the grantor who has the burden of pleading and proving that the adverse possession was complete before he acquired his title. See Mackintosh v.Stewart, 181 Ala. 328, 333, 61 So. 956, 958 (1913) (holding that because the fact and effect of adverse possession are peculiarly within the knowledge of a grantor, the grantor has the burden of pleading and proving that any adverse possession ripened into title before the grantor's term of ownership). Because none of the parties presented any evidence as to when McRaney's alleged adverse possession may have ripened into title, that issue was a question of fact unsuited to disposition by a summary judgment.
Section 35-4-271 provides that the words "grant," "bargain," "or sell" in a statutory warranty deed include the implied covenants of seisin, against encumbrances, and for quiet enjoyment "unless limited by theexpress words of such conveyance." (Emphasis added.) The trial court determined that it was unnecessary to decide when or if McRaney's alleged adverse possession ripened into title because certain language in the deed from Roberts to Steele served to disclaim or limit the implied covenants. The deed contains the following language:
 "SUBJECT, HOWEVER, TO: Any and all easements, reservations, restrictions, rights of way heretofore filed for record which affect said property; all mineral and mining rights heretofore reserved and not owned by grantor; any and all rights of parties in possession, variation in area or in measurements, boundary line disputes, roadways, unrecorded servitudes or easements, any matters not of record including lack of access which would be disclosed by an accurate survey and inspection of the property, and easements or other uses of subject property not visible from the service."
Citing a North Carolina decision, Kennedy v. Kennedy, 236 N.C. 419,72 S.E.2d 869 (1952), Steele argues that because the foregoing limitations are not in the granting or habendum clauses of the deeds, but are located after the legal description, the limitations are repugnant to the granting clause and are therefore void. The trial court rejected that argument on four grounds: (1) the deed in Kennedy was a general warranty deed, not a statutory warranty deed; the limitation in Kennedy appeared immediately after the legal description of the property, whereas, in the present case, the legal description appeared on an attached "Exhibit A" and the limitations appeared "in the body of the main deed directly under the `see attached Exhibit A' language referring to the description of the property"; (3) North Carolina decisions are not controlling authority in Alabama; and (4) the Alabama Supreme Court has, according to the trial court, "spoken to this issue."
The trial court's judgment quotes the following from Pardue v.Citizens Bank Trust Co., 287 Ala. 50, 55-56, 247 So.2d 368, 372
(Ala. 1971):
 "The words `subject to' have been construed by this and other courts. In Blackwell v. Burketts, 251 Ala. 233[, 235], 36 So.2d 326[, 328 (1948)], where the court, in construing the words `subject to the stipulations hereinafter set forth' in a testamentary bequest, said *Page 1123 
`The natural and legitimate office of such proviso is to indicate that subsequent provisions would qualify these bequests.'
 "In McCarter v. Crawford, 245 N.Y. 43[, 46-47], 156 N.E. 90, [91 (1927)] where the contract of sale was made `subject to such a state of facts as an accurate survey would show,' the Court of Appeals said:
 "`. . . To take subject to means to be subordinated to these facts. If a survey showed that one of the buildings encroached upon adjoining property, the plaintiff agreed to take subject to, or under this state of facts. Unless we give this meaning to the provision, it might just as well have been left out of the contract. . . .
"`. . . .
 "`The encroachments claimed to have existed did not constitute a valid objection in view of the terms of sale under which the property was sold, which recited that it was to be taken subject to any state of facts which an accurate survey might show.'
 "In Texaco, Inc. V. Pigott, D.C., 235 F. Supp. 458[, 463 (S.D.Miss. 1964)], aff'd, 358 F.2d 723 (5th Cir.), it was held that the words `subject to' as used in a deed mean `subservient to' or `limited by' and are `words of qualification showing the grantor's intent not to grant an absolute title.'"
Steele has cited us to no convincing authority that would undermine the trial court's reliance on Pardue. We conclude that the limitation in the deed subjected the conveyance to the rights of parties in possession and that there was no implied covenant with respect to those who might have been adversely possessing against the grantor. We therefore hold that the trial court correctly entered a summary judgment for Roberts with respect to the disputed property in the northwest quarter. Because the summary judgment for Roberts was correct, the summary judgment for Regions was also correct.
The judgments of the trial court are affirmed.
AFFIRMED.
Yates, P.J., and Thompson, Pittman, and Murdock, JJ., concur.
[1] For typical language in a warranty deed and in a statutory warranty deed, see St. Paul Title Insurance Co. v. Owen, 452 So.2d 482, 483 (Ala. 1984), and Jesse P. Evans III, Alabama Property Rights and Remedies
§§ 4.9(a) and 4.9(d) (2d ed. 1998).