ANDREWS & BROTHERS v. McCOY.

1. A bill which states the cause of action in the alternative, is insufficient, if one of the alternatives shows that he has no right to a recovery, as the bill must be construed most strongly against the pleader; but if the objection is not taken in the Court below, it cannot be raised for the first time in this Court.

2. Commercial paper, received as an indemnity for existing liabilities, is not transferred in the usual course of trade between merchants, so as to exempt it from a latent equity existing between the original parties.

3. To enable the holder to rely on the rules of the law merchant, as to the transfer of negotiable securities, the legal title to the paper must be vested in him by an indorsement.

4. Where a vendor sells land, and conveys it by a deed, containing the words "grant, bargain, sell," and also a covenant of general warranty, which is at the time incumbered by a mortgage, executed by the vendor, the covenant implied by the statute, from the use of the words "grant, bargain, sell," is broken as soon as the covenant is made, and the express warranty, when the vendee is evicted by the mortgagee.

5. A counter bond, taken by the vendee, from the vendor, with surety to indemnify him against the mortgage, will not be considered a compensation, or satisfaction for a breach of the warranty; and if the vendor, and securities in such bond of indemnity, become insolvent, and there is an eviction under the mortgage, equity will relieve the vendee from the payment of the purchase money *pro tanto,* against the vendor or his assignee.

6. The equity which attaches upon the assignment of a *chose in action,* is one which inheres in, or grows out of the subject matter of the contract. As when there was a warranty against incumbrances, upon a sale of land, an inchoate, or latent equity, would attach to the notes executed for the purchase money, and would be enforced against an assignee of the vendor,

when the equity became perfect, by a breach of the warranty, and the insolvency of the vendor.

7. A vendor of land, took several negotiable notes for the payment of the purchase money, one of which was negotiated in the usual course of trade, the others were not. Held, that although the holder of the note so negotiated, was not subject to an equity existing against the vendor, such equity could be enforced against the holders of the other notes, and that the vendor could not be required to apportion the loss.

Error to the Chancery Court of Mobile.

The bill was filed by the defendant in error, and alledges, that on the 1st February, 1837, the complainant purchased from one Solomon Andrews, a lot, or parcel of land, for $40,000, and for the payment thereof, executed four promissory notes, falling due annually, for four successive years, and received from Andrews a deed of conveyance, with covenants of warranty. That some time in the spring of 1837, Andrews became wholly insolvent, and absconded from the city of Mobile. That on the 23d April, 1837, he gave notice of the facts, and warned all persons from purchasing, or trading for the notes, and on the 24th of the same month, gave a special notice to the Bank of Mobile. That about this time the Bank of Mobile became possessed of the first of these notes, Fontaine & Freeman of the second, and Andrews & Bro. of the two last, with notice as he charges of his equity.

That Solomon Andrews, previous to his sale and conveyance to the complainant, had executed to one St. John a mortgage on a portion of the premises, (which is described,) to secure the payment of $24,000—that St. John filed a bill to foreclose his mortgage, and obtained a decree and order of sale, and that on the 6th May, 1839, the premises were sold, and conveyed to the purchaser, and complainat evicted therefrom—that the portion thus sold embraced the house and out buildings, and rendered the residue comparatively valueless.

The bill charges, that none of the notes were transferred in the usual course of trade—that if the persons holding the notes had any title at all to them, "it was as collateral security for, or in payment of pre-existing debts." The prayer of the bill, is, for an injunction against proceedings on the notes—that it be referred to the Master, to ascertain how much of the purchase money should be abated, on account of the eviction, and that on his pay-

116

ment of that sum, the notes be delivered up to be cancelled. The Bank of Mobile, Fontaine & Freeman, and Andrews & Brothers, are made defendants, and specially interrogated.

The Bank of Mobile, by its answer, insists, that the complainant had notice of the incumbrance on the property, and for the purpose of protecting himself, required a bond of indemnity, with good security, which was executed by B. B. Fontaine and John W. Freeman, and bears date on the first February, 1837. That the note on complainant was received by the Bank in payment, and discharge of debts due from Andrews to the Bank, and the evidences of his indebtedness were then delivered up to him, and that at the time the officers of the Bank had no knowledge of any objection to the note.

Fontaine & Freeman answer the bill, and admit the receipt of the second note from S. Andrews, under the following circumstances: They were indorsers on bills of S. Andrews for his accommodation, to the amount of abut $100,000, which were held by one Richardson—that Andrews failed to pay these bills at maturity—that they proposed to convey to Richardson a plantation and slaves, in this State, to pay these bills, and that Andrews agreed, that if such payment were made, he would reimburse them by delivering good notes. That the sale was accordingly made to Richardson, and this with other notes was delivered to them by S. Andrews, in pursuance of his agreement, at which time they had no knowledge of the equity of the complainant.

The complainant filed a supplemental bill, in which, after repeating the allegations of the original bill, he alledges that at the time of his purchase from S. Andrews, as a cumulative security, he took from Andrews a bond of indemnity, executed by Andrews as principal, and B. B. Fontaine and John W. Freeman as his sureties. That at the time of the proceedings of St. John to foreclose his mortgage, and at the filing of the original bill, Andrews and Fontaine & Freeman were, and remain entirely insolvent, so that the bond has become worthless as a security. That Fontaine & Freeman, or one of them, have negotiated the note they received to one John Freeman, but not in the usual course of trade, or for any consideration which could prevail against complainant; that he was proceeding at law to collect it, &c. and prayed an injunction.

John Fontaine answers, and states that the note on complain-

ant was delivered to him in the usual course of trade, and for a valuable consideration, without notice of the complainant's equity.

Andrews & Brothers also answer, and admit that they are holders of the two notes mentioned in the bill, which they received under the following circumstances·: That they had accepted and indorsed bills for the accommodation of S. Andrews to the amount of $125,000, which bills, in the due course of business, had come to the possession of the Bank of Mobile, and that S. Andrews was besides indebted to them in the sum of $50,000. That becoming alarmed at the state of commercial affairs, and doubting the ability of S. Andrews to meet his engagements, they applied to him for indemnity against the payment of the same, and received the two notes for that purpose. That they have since in good faith, paid to the Bank of Mobile upwards of $125,000, on their indorsements and acceptances for S. Andrews, and relied upon the notes as available means, but the indemnity they received, will not reimburse them. They also rely on the indemnity taken by the complainant, which they make an exhibit, and insist that until he has exhausted his remedy against the sureties on that bond, he cannot proceed against them.

The Chancellor, at the hearing, dismissed the bill as to the Bank of Mobile, but considered that the equity of the complainant, was superior to that of the defendants, Fontaine, and Andrews & Brothers, and directed an account, to ascertain the injury sustained by the complainant by the eviction.

From this decree, Andrews & Brothers prosecute this writ.

HOPKINS, for plaintiffs in error—

The bill charges, that the notes were received by Andrews & Brothers, either in payment of precedent debts, or as collateral security. This is an admission by the complainant, that the defendants are entitled to recover the amount of the notes. The defendants are entitled to the benefit of either alternative, as the allegation must be taken most strongly against the statement of the pleader, and one of the alternatives shows, a title to the notes in the defendants. The objection may be taken either on demurrer, on motion to dismiss for want of equity, or at the final hearing. [3 Porter, 473 ; 10 Wheaton, 189 ; 1 M. & S. 201 : 3 Vesey, 402, and note.]

The penal bond, with surety, was a good and sufficient consideration for all the notes made by McCoy. [1 Greenl. R. 355; 7 Mass. 14; 15 Id. 171; 3 Ala. Rep. 302.]

It is conceded, that negotiable paper taken in payment of a pre-existing debt is protected from latent equities, and the same reason applies to such a case as this. [16 Peters, 1; 1 Starkie's Rep. 1; 1 Bing. N. C. 469; 4 Bing. R. 496.] The cases of Smith v. DeWit, and De La Chaumette v. The Bank of England were mere dicta.

There could be no recovery under the implied covenant in the deed, arising under the statute, from the terms, "grant, bargain, sell," under the statute, because, the bond of indemnity executed contemporaneously with the deed, prevented these covenants from having any effect. As both parties knew, that this covenant was broken when it was made, in a court of law, the taking of the bond would prevent a breach of the covenant, and in a court of equity, it must be considered as a compensation agreed on by the parties.

Before the last note to St. John would be payable, two of the notes made by McCoy would become due, and if before this period, and before eviction, Andrews and his sureties had become insolvent, equity could not have relieved against the payment of the two first notes made by McCoy. Nor would it have been a good defence at law, to either of the four notes. [4 Ala. 21; 1 Greenl. 358.] The only ground of equity would be the insolvency of the sureties in the bond of indemnity, before the notes were indorsed by S. Andrews. An equity arising from the subsequent insolvency of these sureties, would not be availing against the indorsees. To this point, the case of Sherrod v. Rhodes at the present term is a full authority.

The contest here is for the money still due from McCoy, for the purchase money of the land. The Bank it is admitted, is entitled to be paid in full, and as to Fontaine, who has not appealed from the decree, and is no party to this writ of error, the decree is admitted by him to be correct. [3 Porter, 475.] The contest then, is between the Bank and the plaintiffs in error, and as their title accrued at the same time, the equities are equal, and there must be a *pro rata* division of the fund. The rule would be the same, if instead of commercial paper, it was a bond, or an

account; in either case the insolvency must exist at the time of the transfer, if that constitutes the equity.

The fact that McCoy executed a mortgage on the land to S. Andrews, to secure the payment of these notes, cannot, in the present aspect of the case, be considered by the court. It is not put in issue by the bill, and although appended to the answer of the plaintiffs in error, cannot be considered as evidence in the cause. As McCoy has no equity against the Bank, he cannot be permitted to retain a fund for the payment of the debt to the Bank, to which the plaintiffs in error are entitled. But if the Bank had a right to this fund, it could only be enforced upon the application of the Bank.

CAMPBELL, contra.

ORMOND, J.—It is objected by the counsel for the plaintiffs in error, that it appears from the bill itself, that the notes held by the plaintiffs in error, are not subject to the latent equity now set up against them.

The allegation of the bill here referred to, is, that the notes were not received by the plaintiffs in error in the usual course of trade, but that if they had any title to them, " it was as collateral security for, or in payment of pre-existing debts." This allegation is undoubtedly too uncertain. A bill which does not alledge a cause of action, cannot be entertained, and there is no sensible distinction between the absence of the necessary allegations, showing a cause of action, and an alternative admission, that no cause of action exists, as the bill must be construed most strongly against the pleader. Such is the case here, as appears from the decision in the Bank of Mobile v. Hale, 6 Ala. Rep. 639, where it was held that a commercial instrument received before it was due, in payment and discharge of a pre-existing debt, was taken in the usual course of trade, and not subject to a latent equity of which the transferee had no notice.

But this objection cannot be taken advantage of here, in the mode now proposed. If the bill had been demurred to for this cause, and the objection distinctly presented, it could have been obviated by an amendment. Instead of pursuing this course, the plaintiffs in error submitted to answer the bill, set up their title, and litigate their rights, without objection, and it would be gross-

ly unjust to the complainant, to permit them now, after the cause has been heard on its merits, to raise an objection, which, by their previous conduct they had waived in the primary tribunal. Such has been the constant course of decision in this Court, for some years past.

As to the right of the plaintiffs in error to hold these notes discharged from the equities existing between the original parties to them, it seems to us now, as it did at the argument of the cause, that the case of the Bank of Mobile v. Hale, and of Hull & Leavens v. The Planters' and Merchants' Bank of Mobile, 6 Ala. 761, are decisive against the pretension here set up. The defendants in their answer, in stating their title to the notes, proceed to state their liabilities for S. Andrews, as acceptors and indorsers for his house, to a very large amount. They also claim a balance as due from him upon an unsettled account, which, without " pretending to accuracy," they set down at $50,000, and proceed to state, that doubting the ability of S. Andrews to meet the bills for which they were liable, " they applied to him for *indemnity* against the payment of the same, and received from him for this purpose, on the date aforesaid, the two notes herein set forth." They further state, "that they relied on the indemnity so received from said Solomon, as so much available means, from which the said indorsements and acceptances would be satisfied—that said Solomon received a credit for said notes."

From these statements of the plaintiffs in error of their own title, this case is brought fully within the principle settled by this Court, in the Bank of Mobile v. Hale, already cited, that " commercial paper received as an indemnity against possible future loss," is not taken in the usual course of trade. The answer places this mattter beyond doubt. S. Andrews was applied to for an *indemnity*, from an apprehension, that he would not be able to meet his engagements ; the notes were received for that purpose, and relied upon as so much available means to discharge the debts of S. Andrews, for which the plaintiffs in error were also bound. It cannot be pretended, that these notes were received in payment of the debt, which it is alledged in the answer was due from S. Andrews to the plaintiffs in error ; not only because that is not the statement of the answer, but also because it appears that no ascertained debt existed. It seems there was a floating balance between the house of which S. Andrews was a

member, and that of the plaintiffs in error.   That this debt was never liquidated between the parties, is evident from the conjectural estimate of the amount, which is put down as a conjecture, at $50,000.   In the Bank of Mobile v. Hale, we held that a note absolutely and unconditionally received in payment of a pre-existing debt, and the security thus paid off, relinquished, was taken in the usual course of trade, between merchants, as much so as if purchased with money.   Such could not have been the fact here, because it does not appear that S. Andrews admitted any debt to be due, and could not therefore have transferred these notes in its discharge ; and also because, it is expressly stated in the answer, that the notes were looked to, and held as available means, to discharge the outstanding endorsements and acceptances.

In addition, it may be stated, that from the title, as deduced by the plaintiffs in error to these notes, it appears, that the title was never transferred to them by an indorsement, without which the legal title, according to the law merchant, is not vested.   It is true, by that law, a note payable to bearer, may be transferred by delivery merely, but that rule has been changed in this State, by statute, so as to require an endorsement in all cases to vest the legal title, and in this case it appears the paper was payable to order.   Without such legal title, the holder of commercial paper has no other, or greater rights, than that of a chose in action at common law, or of an assignee under our statute.   [Hull & Leavens v. The P. & M. Bank, 6th Ala. Rep. 761 ; Hopkirk v. Page, 2 Brock. 41 ; Story on Bills, 222.]   The language of the answer, does not authorize us to infer, that the notes were endorsed to the plaintiffs in error. · The allegation of the bill is, that the plaintiffs in error, in some way, became possessed of these notes, and they in deducing their title to them, say they " received" them from S. Andrews.   As against the complainant, asserting an equity against the payee of the notes, it devolved on the plaintiffs in error to bring themselves within the rule of the law merchant, so as to exempt the notes in their hands from its operation and effect, as against them.

These notes, then, not having been transferred so as to vest the title according to the law merchant, and not having been received in the usual course of trade, are open in the hands of the plaintiffs in error, to all the equities existing between the original

parties, and this brings us to the consideration of the question, what that equity was, at the time they became possessed of the notes.

The notes were executed with two others, upon the purchase of a tract of land, which was conveyed by deed of bargain and sale, containing the words "grant, bargain, sell," and also a general warranty. Under the statute of this State, the words "grant, bargain, sell," are an implied covenant against all acts done or suffered by the grantor. [Roebuck v. Dupuy, 2 Ala. 535.] The general covenant of warranty is, in this State, equivalent to a covenant for quiet enjoyment. [Caldwell v. Kirkpatrick, 6 Ala. 60.] As the mortgage upon the land in favor of St. John, existed when this sale and conveyance was made, the statute covenant was broken, when the deed was made, and the general covenant of warranty, by the eviction under the sale, to discharge the debt due St. John. It is therefore clear, that the complainant was entitled to be relieved *pro tanto*, against the notes in the hands of Andrews, the vendor, he being insolvent, as was held by this Court in the case of Cullum v. The Branch Bank of Mobile, 4th Ala. 21.

It is however insisted, that this case is varied by the fact, that the complainant took from the vendor, an indemnity, or security, against this breach of the covenant, which in equity must be considered as a compensation.

We think it perfectly clear, that the taking of this security, or indemnity, against the incumbrance upon the land, cannot be considered a satisfaction, or compensation for the breach. It may be that if the sureties of the vendor were solvent, and able to respond in damages for the breach of the warranty, a Court of Equity would refuse to interfere, and enjoin the collection of the purchase money, and leave the party to the remedy he had himself selected. Here it appears, that the sureties, as well as the vendor, are wholly insolvent, and it cannot admit of doubt, that in such a case, equity would relieve the purchaser, as against the vendor, from the payment of the purchase money, and such must be the relief in this case, as the plaintiffs in error are clothed with his rights, and subject to his disabilities.

It is also supposed that the rights of the parties are to be admeasured by the facts as they existed at the time the notes came to the possession of the plaintiffs in error and if the sureties were

not then insolvent, no such equity then existed in favor of the vendee.

The equity which attaches upon the assignment of a chose in action, is one which inheres in, and springs out of the subject matter of the contract. When these notes were delivered, the vendor being then insolvent, they were burthened with the latent equity arising from the covenant against incumbrances. As soon as there was a breach of that warranty, and the sureties also became insolvent, the inchoate right became perfect, Such was the decision of this Court in Smith v. Pettus, (1 Stewart, 107,) which in principle is precisely the same as this case. [See also Murray & Winter v. Lylburn and others, 2 Johns. Ch. 441 ; Livingston v. Dean, Id. 479 ; Coles v. Jones, 2 Vernon, 692 ; Newton v. Rose, 2 Wash. 234.]

The decision in Sherrod v. Rhodes, at the last term, turned upon a different principle. There a surety, who had been compelled to pay the debt for his principal, obtained a set-off in equity against a claim transferred by the Rail Road Co., his principal, to Sherrod. The principle which governed that case, was, that the Rail Road was insolvent when the demand against Rhodes was assigned to Sherrod ; and that therefore in equity he had a right to the set-off against the Company, at the time they assigned the claim to Sherrod. It may be conceded, that at the time these notes were delivered to the plaintiffs in error, the equity of the complainant was not perfect, nor was it necessary that it should be ; it is sufficient that it existed in an inchoate, or latent state. No principle is better settled, as shown by the authorities cited than that the assignee of a *chose in action*, which is the predicament of the parties here, takes it subject to all the equity existing between the original parties, and it is unimportant whether it is inchoate or perfect. In the case of an equitable set-off, as already observed, the rule is different. There, the right must exist at the time of the assignment, though it be not available at law.

The plaintiffs counsel also contend, that the loss must be visited equally upon all the notes, and that only a *pro rata* amount should be deducted from the notes held by them, although the Bank of Mobile, as the holder of one of the notes, is not subject to the complainant's equity.

It appears that the notes executed by the complainant, on the

117

purchase of the land, were mercantile instruments, and if they had all been negotiated in the usual course of trade, without notice of the complainant's equity, he would have been without redress. One of them it appears, was duly negotiated to the Bank of Mobile, which the Chancellor decreed to be paid ; but we can not perceive that this circumstance impairs the right of the complainant to enforce his equity against the holders of the other notes, who have not obtained them under such circumstances as to protect them against such a scrutiny. His right would certainly be perfect against the vendor, if he had negotiated one, and retained the rest, and these defendants, except the Bank, are in no better condition than he would be, if the transfer had never been made. If all the holders of these notes stood in *equali jure*, there would be great reason, and propriety in apportioning the loss between them. Such is not the case, and as the complainant has a clear right to arrest the payment of so much of the purchase money, as he has lost by the incumbrance on the land, it must be borne by those, who by their own acts, have subjected themselves to all the equities existing against the vendor. This leads us to the conclusion that the decree of the Chancellor must be affirmed.