Brinkerhoff, J.
On the 5th of April, 1856, the plaintiffs filed their petition in the common pleas of Morrow county, against the administrator of Harris Thompson, deceased, for the foreclosure of a mortgage executed to them, by said Thompson, in his lifetime, and for the sale of the lands therein described; and the petition alleging that one Joseph-D. Weller is in possession of said premises, claiming some sort of a -title thereto, he also is made a party defendant.
Weller answered, and also filed a cross petition, to which -one James Thompson was made a party defendant. James Thompson answered to the cross petition, and Weller replied.
*618 The case having been tried in the common pleas, was appealed to the district court, and there reserved for decision here.
The facts of the case appearing in the pleadings and proofs,, so far as it is deemed necessary to state them, are substantially these:
Nicholas Kyle died seized of the premises in controversy ? leaving Abby Kyle, his widow, and the plaintiffs his heirs at law. They caused proceedings in partition to be instituted in the county of Morrow, which resulted in the assignment to-the widow of her dower, by metes and bounds, and an order of sale of the premises subject to the dower estate.- The premises were sold, by the sheriff, to Harris Thompson, for $2,400, one third to be paid in hand, and the remainder in equal payments, in one and two years, with interest. The sale was made April 9, 1853, confirmed at the May term of the court of common pleas of said county, and a deed ordered to the purchaser. The deed, the notes for the deferred payments, and mortgage to secure them were executed and delivered on the 7th of May, 1853. The mortgage, a copy of which is attached to the petition, was filed for record March 31, 1854. The notes in the petition set forth were given for the last payment.
On the 18th of February, 1854, said Harris Thompson entered into a written contract for the sale of the premises to the defendant, Joseph D. Weller, for the sum of $3,300, a copy of which contract is attached to Weller’s answer. Said sum to be paid, $1,400 on April 1, 1854, $1,000 April 1, 1855, and $900 April 1, 1856; possession to be delivered April 1, 1854, at which time Weller was to execute his notes, and a> mortgage to secure the deferred payments.
On the 5th of April, 1854, Thompson executed a deed to Weller, who on the same day paid the $1,400, and executed his notes and a mortgage on the premises to secure the deferred payments. This mortgage was filed for record April-' 15, 1854.
On the 28th of March, Weller, without objection, moved-into a vacant cabin on the premises, though Harris Thomp *619 son kept his stock thereon until after the 1st of April, 1854.
At the time Weller made his contract, the widow Kyle, together with some of the plaintiffs, was living on the premises. In March, 1855, Weller had actual notice of the plaintiff’s claim. After receiving such notice, and after his first note-became due, he paid $100 on it to John Thompson, a brother of Harris Thompson, who was then sick, to be paid to Conway, who had a claim against said Harris; and subsequently he paid the most of the remainder of the note, in sundry payments, to John Higgins, who, it is said, held the note in some way as a collateral for some debt of Harris Thompson, but when he obtained it, whether before or after maturity, or from whom, it does not appear. The note was payable to order, but was not indorsed by Harris Thompson.
The defendant, James Thompson, holds the last note of Weller, due April 1, 1856, for $900, which, together with the mortgage given to secure it, he contracted, for as a collateral security for his indemnity, as surety for his son Harris, in September, 1854. At the time Harris agreed to assign him these securities (Sept. 1854), the said James had full knowledge of the indebtedness of Harris to the plaintiffs, and of the mortgage on the premises. This note was, by its terms,, payable to order, but was not indorsed by the payee.
Harris Thompson died insolvent the latter part of April,. 1855.
At the time Weller entered into his contract of purchase, he searched the county records, and, of course, then found no mortgage against the land on record; and he had no actual notice of the plaintiff’s mortgage, until after his contract of purchase was mainly carried into execution.
Several questions are made, anl somewhat elaborately discussed by counsel in argument, which, not being, in our view of the case, necessary to its decision, we pass over without further notice.
Two principal questions arise in the case. And,
1. As to the validity of the mortgage, and the right of the-plaintiffs to enforce it, as against Weller.
*620 After the execution of the mortgage to the plaintiffs, but before it was filed for record, Weller contracted for the purchase of the premises from Harris Thompson, the mortgagor; One day prior to the time when Weller, by the terms of his contract, was to have possession of the premises, to receive his deed, make the first payment, and execute his notes and mortgage for the balance of the purchase money, and five •days prior to the time when he actually did receive his deed, and make his first payment, and execute his notes and mortgage for such balance, the plaintiffs’ mortgage was filed for record.
The fact that Weller moved into a cabin on the premises, three days prior to the time of the record of the mortgage, we do not regard as a matter of any particular weight or significance. He did not, thereby, take possession of the premises; he did not then move upon the premises in pursuance of his contract of purchase; he was there by permission — as a matter of grace and favor — a few days before he was entitled to be there under his contract. And before he was entitled to possession under his contract, before he had made any payment whatsoever under his contract, and before he had received his conveyance, or had executed his notes or mortgage in pursuance of his contract, the plaintiffs’ mortgage was filed for record, and from thence operated as constructive notice to him and to all others. It seems to us that, up to this time, while his contract was wholly executory — ■ when he had neither paid nor parted with anything — and all his rights rested in contract merely, Weller occupied no superior ground of equity to that which the plaintiffs could claim. They, too, had a contract, a mortgage; good as between the immediate parties to it, and complete as a legal instrument, and constructive notice to all the world, from the moment it was filed for record; and from that moment, their former position of equal equity acquired the preference and superiority, belonging to a legal lien. While Weller’s rights rested solely upon a contract wholly executory, he had no higher or better rights than Harris Thompson, his vendor had; and as against both him and Weller, the plaintiffs were at liberty to perfect their lien, by filing their mortgage for *621 record. And having, by the record of the mortgage, constructive notice of its existence, and of the incumbrance it established, it was his business to proceed as he might be advised, either to rescind his contract, or to assume the risks of carrying it into execution. And, in our opinion, the fact that he examined the record and found the title clear of record incumbrance at the time he made his contract, does-not alter the case. We think he was bound to look to the-state of the title, up to the time when he entered upon the-execution of his contract.
If we are right in these views, it follows that the plaintiffs are entitled to enforce their mortgage against the land in controversy.
2. The second question is, as to the respective rights, between each other, of Weller and James Thompson.
It will be recollected that Weller gave to his vendor, Harris Thompson, two notes, one for $1000, payable in one year,, and one for $900, payable in two years; the first of which found its way, it does not satisfactorily appear how or when,, into the hands of one Higgins ; and the second of which was handed over-by the payee, Harris 'Thompson, to his father,, the defendant, James Thompson, as his indemnity for having, become bail for Harris on a debt due from Harris to a third-party, and which James Thompson has been compelled to pay. Weller, after notice of the fact that the second note had been transferred to James Thompson, has paid off the first note,. $100 of it to Harris Thompson, in his lifetime, and the remaining $900 of it to Higgins. •
James Thompson now claims that inasmuch as' it does not-appear where Higgins obtained, nor by what title he held, the-first note, Weller’s payments made on that note, after notice that the second note had been transferred to him, James-Thompson, were wrongful; and that Weller is not, inequity, entitled to set up such payments against him. But we think otherwise. These notes were both drawn payable to Harris Thompson or order; they were legally transferable-only by indorsement; neither of them were ever indorsed ; and the holders of them stood in the shoes of the payee, and sub *622 ject to all equities existing in favor of the maker against the payee. In this respect, Higgins and James Thompson were on a footing of equality. Prima facie, the note in the hands of Higgins, being the one which first fell due, was entitled to be first paid; and if any fact or circumstance existed to change this presumption, the burden of proving them properly lays on James Thompson, who claims a preference which would not, prima facie, arise in his favor. No such proof is made, and, therefore, his claim to a preference can not be allowed.
Again, it is claimed in behalf of James Thompson, that although the note held by him, by reason of its never having been indorsed to him, was subject to all equities existing between the payee and maker at the time when the maker received notice of its transfer in equity, yet it is not, as matter of law, subject to equities accruing or procured subsequent to notice of such transfer; and it is insisted that the equities which arise upon the facts of this case, in favor of Weller, to avoid the payment of the note held by James Thompson, all accrued subsequent to the time of the transfer of the note to him, and notice thereof to Weller.
The rule of law thus asserted is undoubtedly correct, as to equities arising between the parties after notice of transfer, when such equities are in the nature of setoffs. But the doctrine does not apply to cases like this, where the equity claimed inheres in, and grows out of, the original subject matter of the contract between the parties to the note. See Andrews & Brothers v. McCoy, 8 Ala. Rep. 920, a case which, in many important features, is closely analagous to this, and where the principle we have just announced is considered and very clearly stated.
It is further contended, in behalf of James Thompson, that Weller ought not to be allowed to avoid the payment of the remaining note given for the purchase money of the land, but ought to be turned over to such remedy as he may here- . after have on the covenants of warranty contained in the conveyance to him; and this for the reason that he has not yet been evicted from the premises. And Picket v. Picket, 6 Ohio St. Rep. 525, is cited in support of this position. In *623 that case it was held, that “ a purchaser of land, who has received a deed containing a covenant of warranty, can not plead in bar to an action on a note given for the purchase money, defect of title, unless he has been evicted by title paramount.”
Without questioning the authority of that case, we may say, that it was an action at law, in assumpsit, in which principles governing courts of law were rigidly applied, and which evidently ought not to be extended. The case before us is in the nature of a proceeding in equity, and the parties in interest are all in court, and their rights are open to consideration and adjustment. There it did not appear but that the warrantor was, or would be, fully able to respond to an action on his covenant when it should mature; here, the warrantor is dead, and his estate insolvent; in that case, there was no eviction, and non constat that there ever would be; in this, the decree we are about -to render establishes a constructive eviction to the extent of the mortgage incumbrance.
There will be a judgment for plaintiffs for the sale of the mortgaged premises, unless the amount remaining due on the mortgage is paid by a day to be named; and an order perpetually enjoining the collection of so much of the note held by James Thompson as is necessary to cover the mortgage incumbrance.
Scott, C.J., and Sutliff, Peck and Gholson, JJ., concurred.