THE BANK OF MOBILE, HALLETT, ET ALS. V. HALL.

1. A negotiable instrument received before it is due, in payment of a pre-existing debt, is received in the usual course of trade between merchants, and will protect the holder against a latent equity between the original parties, of which he had no notice.

2. A negotiable instrument received from the payee, before maturity, as an indemnity against future loss on a suretyship then existing on the part of the holder, for the payee is not a transfer in the usual course of trade, so as to preclude the maker from availing himself of a latent equity between him and the payee.

ERROR to the Chancery Court of Mobile.

The bill was filed by the defendant in error, who alleges, that in 1835, he purchased certain premises in the city of Mobile from Solomon Andrews, for the sum of $20,000; for which he gave his four several promissory notes, payable in one, two, three and four years, to the order of Andrews, and payable and negotiable in Bank; and that Andrews, by his deed, covenanted that he had a good title, and that the premises were free from incumbaance. That he paid the sum of $6,000, as was due by his first note. That at the time of the conveyance, the property was incumbered by a mortgage, by Andrews to one Pope and others, for the sum of $10,200. That he never knew of the incumbrance until his payment of the first note; and before the second note became due Andrews became insolvent, and absconded. That on the 25th

May, 1837, the premises were exposed to sale under the said incumbrance, and purchased by complainant for the sum of $8,600. which was fully paid.

That in December, 1837, he was served with notice by the Bank of Mobile, that they would move for judgment; by which he was informed that the Bank was in possession of the note given by him to Andrews. payable two years after date, for $5,750. That he was a director of the said Bank from January, 1836, to December, 1837; and that during that time, the Bank did not come legally into possession of the note; and that Andrews never indorsed or delivered it to the Bank; and that it has never, by discount or otherwise, come legally into the possession of the same; but that W. R. Hallett, the president of the Bank, without the consent of the directors, fraudulently obtained it and the other notes.

He charges, that Hallett knew of the incumbrance and of his equitable defence when he obtained the notes, and prays that an account be taken, that the notes be produced and cancelled, that Hallett be restrained from suing on or negotiating the notes, &c.

The Bank, by its answer, admits that the note of complainant to Andrews was received by it to secure the indebtedness of Andrews to the Bank. That it was received by Hallett, its president, under and by virtue of his duty as presiding officer of the institution; that the note was received on the 30th March, 1837, carried to the credit of Andrews, and checked out by him to pay his bills drawn on H. M. Andrews & Co. of New York, who were in failing circumstances, and shortly after stopped payment; the settlement of the draft of H. M. Andrews & Co. took place the succeeding day; that the whole settlement was spread upon the books of the Bank and submitted to the board, of which defendant was a member; that complainant must have had knowledge of the transaction, as well as of the incumbrance on the property. And for further particulars, adopts the answer of Hallett.

Hallett denies all knowledge of the consideration of the notes, until the publication of defendant on the 22d April, 1837, or of the purchase, or the incumbrance referred to. That he received the notes in controversy under the following circumstances: the Bank had purchased notes, and discounted bills, from said Andrews, drawn on H. M. Andrews & Co. of New York to a large

amount running to maturity; that believing said drafts would not be paid, he obtained from the said Andrews certain notes, complainant's being of the number, which were regularly and properly endorsed to the Bank; that said note was received in payment of that amount of drafts; and that as president of the Bank, he gave an order to said Andrews to have delivered up to H. M. Andrews & Co. the drafts of said Andrews. The notes received of Andrews were placed to his credit on the books of the Bank; he then checked for the amount to be entered to his credit, with which he paid the drafts, and respondent, as president, gave him an order for them. The settlement was entered on the books of the Bank, and the directors expressed themselves satisfied therewith.

That he is the owner of the note for $5,500, due three years after date, which he received by indorsement from Andrews; and at the same time received the notes of two other persons, one for $4,960, and another for $4,720, amounting in the aggregate to $15,180.

That Andrews had sold to the Planters' & M. Bank a lot of ground on which the Bank house now stands, which, being incumbered by a mortgage, the Bank would not pay the purchase money without security; that respondent became the surety of Andrews therefor, and has been compelled to pay the Bank the amount due thereon; and that he received the said note and the others mentioned to indemnify and save him harmless on his said suretyship. That he knew of no defence to the note, or he would not have taken it. Does not admit that complainant did not know of the incumbrance of Pope; but insists, that from the circumstances he must have known it; and at all events that it was duly recorded.

The cause coming on to be heard on the bill, answers and exhibits, the chancellor considered the equity of the complainant to be superior to that of the defendants, and that he had the right to retain out of the purchase money of the land the amount paid by him to extinguish the incumbrance; and directed the master to state an account between the parties.

At a subsequent term, the complainant filed his petition, that one Campfield was the holder, and claimed to be the *bona fide* owner of the fourth and last note executed to said Andrews, and had brought suit thereon; and, thereupon, the court gave permis-

sion to the complainant to file a supplemental bill, making the said Campfield a party; which was accordingly done. Other proceedings afterwards took place not necessary to be here noticed.

From the decree of the chancellor, the defendants prosecute this writ, and assign for error the decree of the chancellor, declaring the notes in their hands subject to the complainant's equity.

Mr. CAMPBELL, for defendants in error, moved to dismiss the writ, upon the ground that the decree was not final, but interlocutory only; but the court overruled the motion; and the cause came on to be heard on the merits.

PHILLIPS and DARGAN, for plaintiffs in error, argued:—The Bank acquired the note on the 30th March, 1837; any equity, therefore, which arises from the insolvency of Andrews, did not exist for fifteen days after the transfer; and no equity from the incumbrance arose until the 23d May afterwards. The Bank is, therefore, a *bona fide* holder without notice.

Illegality of consideration is no defence against a *bona fide* holder without notice, unless the statute *ex vi termini* so declares it. [Story on Bills, 213.]

For a considerable time it was considered that if the holder took the bill under suspicious circumstances, or without due caution and inquiry, although he gave the value for it, he was not deemed a *bona fide* holder; but this doctrine has since been overruled. [4 Adol. & E. 870; 10 id. 784; Story on Bills, 216.]

Receiving a note in payment of a precedent debt, or taking it as collateral security, is a taking in the usual course of trade so as to cut off the equities between the parties. [16 Peters, 1; 20 Maine, 176; 21 Wendell, 501; 24 id. 115: 1 Howard, 236.]

As to the right to set up the equity between the original parties, there is a difference between general assignments and those of a specific character such as this. [2 Story's Eq. 480; 7 Wheaton, 56; 9 Pickering, 100.]

Vendor has a *lien*—but he takes a security in the shape of his covenant—does not this operate as a release of the *lien* in favor of a *bona fide* holder? [3 Ala. 302; 13 Peters, 464; 1 Brock. 97; 2 id. 185; 3 G. & J. 425; 5 Yerger, 205; 4 Kent's Com. 153.]

There is no covenant against incumbrances in the deed from

Andrews to complainant, unless it can be implied from the words, "grant, bargain, sell."

As it respects the note held by Hallett, receiving it as an indemnity, was receiving it upon a contract on a sufficient and valuable consideration; and his equity is at least as great as that of the complainant.

CAMPBELL and GIBBON, *contra.* The Bank is not an innocent holder of the note, because Hallett had not the power to discount it; and as the bill of Andrews was worthless, the Bank gave nothing for it.

To establish the right of complainant as against Andrews, whether with or without covenants, they cited 1 Sugden on Vendors, 554; Gilbert's Eq. Rep. 7; 3 Swanstons, 656; 4 Brown's C. C. 394; 1 Vesey, sen. 88; 1 S. & R. 438; 11 id. 246; 3 Mumford, 68; 1 Dana, 303; 2 id. 276; 1 Paige, 215, 9 id. 444; 5 Leigh, 60.

That when Andrews became insolvent, the right to exert this equity arose, and controlled all dispositions by him of the notes to persons having notice of his insolvency. [1 Monroe, 194; 3 A. K. Monroe, 6; 2 Paige 581; 4 Ala. Rep. 21.]

That the fact of notice of the insolvency of Andrews, and that the dealings were upon antecedent debts, deprives the party of the character of a *bona fide* purchaser, and leaves him only the rights of an assignee. [5 Johns. C. 58; 20 Johns. 637; 22 Pick. 243; 13 Wendell, 570; 9 id. 170; 10 id. 86; 12 id. 600; 13 id. 605; 4 Binney, 366; 4 Paige, 215; 1 id. 135; 5 id. 644; 1 Dev. Eq. 106.]

When the question results in an inquiry concerning equities, if that of the defendant is manifestly superior, it is prior; and to relieve it from this, the plaintiffs must attach a mercantile character to the negotiation.

As to the words, "grant, bargain and sell," amounting to a covenant against incumbrancers, see 2 Binney, 98; 11 S. R. 113.

The equity of Hallett's case is settled by the case in 4 Ala. Rep. 38-9.

ORMOND, J.—The notes of the defendant in error, out of which this controversy arises, being payable in Bank, are to be governed by the rules relating to inland bills of exchange; and being transferred by indorsement to the plaintiffs in error before they were due, and without notice of the equity now attempted

to be set up, the only question is, whether the indorsees received them in the usual course of trade.

In Bay v. Coddington, [5 Johns.C. 54,] it was held, that receiving negotiable paper as a guaranty or indemnity against future responsibilities, as an accommodation indorser for the person from whom it was received, was not in the usual course of business or trade. That to be so, it must have been received in payment of an antecedent and existing debt—for cash or property advanced, debt created, or responsibility incurred on the strength and credit of the paper. Since that time, the decisions of the supreme court of New York seem to have vibrated on this question, so that, in the language of Mr. Justice Story, in Swift v. Tyson, [16 Peters, 1.] it is difficult to ascertain what the law of that State is on this subject.— [See Ward v. Howell, 9 Wendell, 170; Rowsa v. Brotherson, 10 ib. 85; Ontario Bank v. Worthington, 12 ib. 593; Payne v. Cutler, 13 ib. 605; Bank of Salina v. Babcock, 21 ib. 490; Bank of Sandusky v. Scoville, 24 id. 115.]

In the case referred to in 16 Peters, this question came before the supreme court of the United States, and it was there held, after a review of all the authorities, English and American, that the receipt of a negotiable instrument in payment of a precedent debt was, in the usual course of trade; and if it was received before it was due, and without notice of an equity between the original parties to it, the holder was not affected by it. Such was the decision, also, in Brush v. Scribna, [11 Conn. 388,] and such appears to be the received doctrine of the English courts.

We agree entirely with the doctrine as thus stated. It appears to us there is no sensible distinction between receiving a bill in payment of a pre-existing debt, and purchasing it with money or property. In either case, the consideration is a valuable one; and all the reasons which apply to protect the holder against latent equities between the original parties of which he had no notice, apply with the same force in the one case as in the other.

This is conclusive as to the note held by the Bank of Mobile. The Bank received the note absolutely and unconditionally in payment of a debt, and relinquished the security thus paid off. The Bank is then a holder of the note, received by indorsement before its maturity, and without notice of the equity of Hall, for a full and valuable consideration, and upon the well established

principles of the law-merchant, is not affected by the latent equity existing between the original parties.

Something was said in argument about the title of the Bank to the note, and the authority of Hallett to act as its agent in obtaining it. It is not a matter of any moment whether Hallett had authority, in the first instance, to make the negotiation with Andrews or not, as his acts, as such agent, have been ratified by the Bank.

Hallett, the holder of the other note, does not stand in the same predicament. He, it appears, was the surety of S. Andrews in a bond for title to a lot of ground, in the city of Mobile, to the Planters' & Merchants' Bank, the lot being incumbered by a mortgage to one Hagan, and that he received the note from Andrews to indemnify him and save him harmless from loss on his suretyship; that he has since been compelled to discharge the incumbrance.

It appears to us, that this note was not received in the usual course of trade between merchants, so as to protect the holder against a latent equity. In the case of Swift v. Tyson, [10 Peters, 1,] already referred to, the court expressed their opinion, that a note received as *collateral security* for an existing debt, is received upon a valuable consideration in the usual course of trade. That point, however, did not arise in the cause, and the expression of an opinion upon it for that reason, was objected to by Mr Justice Catron.

In Cullum v. The Branch Bank at Mobile, [4 Ala. 21,] this court intimated that the taking a note as *collateral security* for the payment of a debt, would not be such a transaction as would shut out the equities between the original parties, but the opinion is expressed, that a new consideration, "such as the discharge of other paper, or of other parties," would produce that result. This point, however, was not involved in that case. Here, when this note was received, there was no debt existing between Hallett & Andrews, but a mere contingent liability on the part of the former, to pay a debt in future for the latter; it was not then received even as collateral security for a *debt* then existing, but was received as an *indemnity* against possible future loss.

No case has been cited, which goes the length here contended for, and it cannot be said with any propriety, that such a transaction is a dealing in the usual course of trade. It will not be con-

tended that Hallett can resist the equity of the maker of the note against his assignor, on any other ground than the actual payment of the security debt, against the payment of which, it was intended as an indemnity; yet, this right to hold the note, discharged from the equities between the original parties to it, if it existed at all, must have attached to it at the moment it was endorsed, and could not depend upon some future act to be performed by the endorsee, and depending for its performance on his volition; otherwise, it might happen that he would collect the note, and never pay the surety debt

Such being the aspect of the case, and the inquiry into the equity between the original parties being opened, how would the case stand as between them? Upon this point, there can be no doubt. The case of Cullum v. The Branch Bank of Mobile, previously cited, is an authority full to the point, that if the incumbrance was concealed by the vendor at the time of the sale, equity would relieve the purchaser from the payment of the purchase money *pro tanto*, on the ground of fraud, although the incumbrance was of record, and there was a warranty against incumbrances. And further, that when a purchaser with warranty is evicted by a title to which his covenants do not extend, and the vendor is insolvent, equity will restrain him from recovering the purchase money.

This is decisive as to the equity of Hall, whether the warranty of the vendor is against incumbrances or not; or whether the incumbrance was concealed at the time of the sale of the land, which appears to be the true aspect of the case upon the record. Hallett being in no better condition than his assignor, but subject to the same equity, cannot recover on the note.

It results from the opinion here expressed, that the decree of the chancellor must be reversed, as it respects the Bank of Mobile, and the cause be remanded for further proceedings, not inconsistent with this opinion. Costs adjudged in favor of the Bank of Mobile against Hall, and against Hallett and in favor of Hall.