## McKENZIE vs. BRANCH BANK AT MONTGOMERY.

[NOTICE AND MOTION FOR SUMMARY JUDGMENT AGAINST BANK DEBTOR.]

1. *Bill of exchange, accommodation endorsement of.*—If a bill of exchange, which is endorsed for the accommodation of the acceptor, for the special purpose of enabling him to obtain an extension of a debt in bank, is transferred by him as collateral security for the payment of another pre-existing debt, the creditor takes it with implied notice of the fact and purpose of the accommodation endorsement, and subject to any defense which would be available against the acceptor himself.

2. *Charge assuming facts to be proved, erroneous.*—A charge which assumes that a certain fact is proved, when the evidence is conflicting, is erroneous ; as where it begins thus, " *When the defendant shows,*" &c.

3. *Fact to which witness may depose, and which may be inferred by jury.*—Where the issue involves the application of the proceeds of collateral securities to the payment, *pro tanto,* of several debts, the amount of a debt being shown, the jury may ascertain from it as a basis the *pro rata* share to which it was entitled ; or a witness may testify what the *pro rata* share was, as direct and primary evidence, without stating the amount of the debt.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN GILL SHORTER.

This suit was instituted by the appellee, by notice and motion for a summary judgment against John McKenzie,

William C. Wright, and Benjamin Gibson, on a promissory note for $1,000, dated September 29, 1846, payable five years after date to the Branch Bank at Montgomery, and payable and nogotiable at said Bank.  Wright and Gibson having died pending the suit, it was allowed to abate as to them, and proceeded to judgment against McKenzie alone.  The only plea was the general issue, with leave to give any special matter in evidence.  The bill of exceptions shows the following facts:

After the plaintiff had produced the note sued on, the defendant proved, that he was the surety of one Robert Harwell, on certain debts due to said Bank, and that the note sued on was given by him for this indebtedness.  He then offered in evidence said Harwell's answers to certain interrogatories propounded to him, the substance of which was, that some time in 1841, or '42, he (Harwell) deposited in said Bank, as collateral security for the payment of the debt on which McKenzie was bound as his surety, certain drafts and notes, among which were two drafts for $1,000 each, drawn by Mason Harwell on said Robert Harwell, and endorsed by H. W. Farley, due on the 18th April and 18th May, 1842; that these drafts and notes were deposited in said Bank for the benefit and security of McKenzie, and were never re-delivered to said Harwell.  "He then proved that said draft for $1,000, drawn by Mason Harwell on said Robert Harwell, and endorsed by H. W. Farley, due April 18, 1842, was prosecuted to judgment against said Farley, by plaintiff, and suit instituted against said Farley on the other draft, due May 18, 1842; that said Farley, after judgment had been rendered against him on said first draft, and whilst the suit on the second was pending, filed his bill in chancery against plaintiff, to enjoin the collection of said drafts from him; that while said suit in chancery was pending, plaintiff compromised said claims against Farley, at the sum of $750, and released him from all liability on said drafts."

The proceedings in this chancery suit are here made an exhibit to the bill of exceptions, and the bill states these facts:  That said Harwell was largely indebted to said Bank, and had given a mortgage on certain real estate to secure the payment of the debt; that said two drafts were endorsed by

Farley, at the request of said Harwell, and for his accommo-
dation, in order to make a payment and obtain an extension
of said debt; that said Bank, when these drafts were pre-
sented to it by Harwell, had notice of this fact, and refused
to take them; that Harwell then proposed to deposit them as
collateral security, upon the express condition that his debt
should be extended through the business season of the year
1842; that no specific answer was at the time given to this
proposition, but the drafts were received, and the Bank
promised to consider the proposal, and to return an answer
through its cashier; that the Bank never did accept said pro-
posal, and never informed Harwell of its acceptance; that in
April, 1842, before the close of the business season, the Bank
sold the property covered by said mortgage, under a power
of sale contained therein; that it afterwards received from
Harwell a draft on John Powell, for $3,000, in part payment
of said debt, on which judgment was afterwards recovered
against said Powell, who is perfectly solvent; and that the
balance of Harwell's debt has been satisfied by McKenzie.

" The defendant then introduced evidence tending to show,
and which he insisted did show, that the said Farley, at the
time said compromise was made, and for some time thereafter,
was solvent, and that the amount of said drafts could have
been collected from him by execution. It was shown, also,
that the plaintiff did not apply the whole amount of money
received from said Farley on said compromise as a payment
on the indebtedness of Harwell on which defendant was
surety, but only applied the sum of $— to that indebtedness,
and applied the sum of $— in part payment of another debt
of said Harwell's, on which John Powell was surety, and on
which McKenzie was not liable. There was some evidence
that the collateral securities, deposited by said Harwell with
plaintiff, were deposited by him to be collected and applied
by plaintiff, not only to the indebtedness on which said Mc-
Kenzie was surety, but also to the said indebtedness on which
said Powell was surety. There was no evidence of the
amount of the debt, due by said Harwell to plaintiff, on
which Powell was surety. The only evidence of the con-
sideration and purpose for which said drafts were endorsed
by Farley, or made, was Farley's said bill in chancery; and

said bill was also the only evidence offered by plaintiff to show the necessity of compromising said drafts with Farley. There was no evidence that plaintiff knew, or had any notice of, the purpose for which said drafts endorsed by Farley were made, before they were received by plaintiff from said Harwell. It was further in evidence that, after the compromise had been made by plaintiff with said Farley, and the money arising thereon had been applied by plaintiff, *pro rata*, to the debts due by Harwell, the defendant was informed of the facts; and the witness who testified on this point stated, that he could not then repeat defendant's reply, but he recollected that defendant approved plaintiff's acts; and after this information defendant gave the note sued on, with other notes, in extension of his debt to the Bank.

" Upon this evidence, the defendant requested the court to instruct the jury, that if Farley endorsed drafts for the accommodation of Harwell, and entrusted them to him, to be used in negotiation with the Bank, and for a special purpose, but the purpose for which they were made was not known to the Bank, then Farley was liable on the drafts, although Harwell used them for a different purpose than was intended by Farley; the Bank not being informed of the breach of faith by Harwell, and giving him time on his indebtedness to the Bank in consideration of said drafts. The court refused this charge as asked, but gave it with this qualification: that if Farley was an accommodation endorser merely, then the law would charge the plaintiff with knowledge of the fact, and of the special purpose for which the drafts were endorsed. The defendant excepted to the refusal to charge as requested, and to the qualification given.

" The defendant requested the court to charge the jury, further, that when the defendant shows that the collaterals were deposited in the Bank for the benefit of the debt on which he was liable, and the plaintiff claims, in reply to that evidence, that there were other debts to which the collaterals were to be applied, the *onus* of proving the amount of those other debts, and the share to which they were entitled, is on the plaintiff; and, unless the plaintiff shows these facts, the jury are authorized to give the defendant the benefit of the

collaterals on that point. The court refused this charge, and the defendant excepted.

" The plaintiff requested the court to charge the jury, that if these notes and drafts were · deposited with the Bank as collateral security for debts of Robert Harwell on which McKenzie was surety, and also for debts on which John Powell was surety, then, if the jury find that any of the collateral paper could have been collected by due diligence, they must allow McKenzie only the credit to which he is entitled, in proportion to the amount of debts on which he was surety to those on which Powell was surety. This charge the court gave, and the defendant excepted."

The charges given, and · the refusals to give the · charges asked, are now assigned as error.

NAT. HARRIS and WM. B. MOSS, for appellant.

ELMORE & YANCEY, contra.

STONE, J.—There are two fatal objections to the first charge asked by the defendant in the court below, either of which justifies the qualification given by the judge: first, the acceptor of the bills, himself, passed the papers to the Bank, (Saltmarsh v. P. & M. Bank, 14 Ala. 668); and, secondly, the bills were not sold to the Bank in payment, but placed there as collateral security to a pre-existing debt.—Boyd & Macon v. McIver, 11 Ala. 822; Thompson v. Armstrong, 7 Ala. 256; Marston v. Forward, 5 Ala. 347; Bank of Mobile v. Hall, 6 Ala. 639; Wardell v. Howell, 9 Wend. 170; Andrews v. McCoy, 8 Ala. 920. The endorser, Farley, could make the same defense to the bills thus placed in the Bank, as if they still remained in the hands of Robert Harwell, the acceptor; and any charge which assumes the contrary, does not assert a correct legal principle. This charge, as asked, was properly refused. See, also, Wallace v. Br. Bank of Mobile, 1 Ala. 565.

The second charge asked and refused, is somewhat involved. Certainly it was the duty of the Bank, which had assumed to apply a part of the proceeds of the collateral paper to another debt, to furnish to the jury a basis, to enable that body to determine the share to which defendant was entitled. If the charge had asked this instruction, unclogged by other

and illegal propositions, we would feel constrained to reverse the case. But in asking the charge, the counsel embarrassed it with other terms, which, taken as a whole, justified its refusal. It sets out with the assumption, that defendant had *shown* certain facts to exist. The language employed is, " When the defendant McKenzie shows," &c. This language, when used in reference to conflicting testimony before a jury, is always improper. The court cannot predicate, or assume, that any fact, embraced in the issue, has been *shown* or proven. The jury, under our system, is the only tribunal which passes on controverted facts in courts of law; and until the verdict is rendered, no such fact is established, or *shown* to exist.—Ward v. The State, at the present term.

There is another objection to the second charge asked. It was not necessary that the plaintiff should prove both the *amount* of the debt on which Powell was surety, and the *pro rata share*, to which it was entitled. Proving the *amount* of the debt, would have given the jury a basis, from which they could ascertain the *pro rata* share; or, the testimony might have shown the *pro rata* share, as direct and primary evidence. That such form of inquiry was permissible, see Douge v. Pearce, 13 Ala. 127; Stanley & Elliott v. The State, 26 Ala. 26; Massey v. Walker, 10 Ala. 288.

The legal correctness of the affirmative charge found in the bill of exceptions, is too clear to admit of elucidation.

There is no error in the record, and the judgment of the circuit court is affirmed.