# Marks *v.* First National Bank.

*Action on Note, by Payee against Indorser.*

1. *Accommodation indorser.*—An accommodation indorser of a note is liable to the holder, who has taken the note for value, before maturity, in good faith, and without notice of any fraud or equity which would vitiate it, precisely as if he had received value for his indorsement; and the fact that the holder knew, when he took the note, that the indorsement was for accommodation only, does not affect the principle.

2. *Same; taking note in payment of antecedent debt.*—When a creditor takes the note of his debtor, with accommodation indorsements, in payment of an antecedent debt, he is a purchaser for value, in due course of business, equally as if he had advanced money on the faith of it; but the rule is different when such note is taken as collateral security for an antecedent debt.

3. *Same; indorsement before negotiation.*—When a person indorses a note in blank, for the accommodation of the maker, to be used in payment of an antecedent debt due to the payee, he is liable to the payee as an indorser, although the note was never put in circulation by the payee.

4. *Same; fraud of maker as defense.*—If the accommodation indorse-

VOL. LXXIX.

ment is procured by the fraud of the maker, in concealing a condition annexed to a prior indorsement, the payee not having knowledge or notice of such fraud when he accepts the note as payment, such fraud is no defense to the accommodation indorser.

5. *Conditional indorsements and signatures as sureties; difference between bonds and commercial paper.*—The principle which governs the liability of sureties on bonds conditionally delivered, as asserted in *Guild v. Thomas* (54 Ala. 414), and *Bibb v. Reid* (3 Ala. 88), has no application to commercial paper, in the hands of an innocent purchaser, who acquired it before maturity.

6. *Declarations of bank officer, while negotiating note; admissibility against accommodation indorser.*—The declaration of the cashier of the plaintiff bank, while negotiating with a debtor for the acceptance of his note, with accommodation indorsements, in payment of an existing debt, to the effect that the note would not be accepted without the indorsements of the defendant and another person, are admissible as evidence against the defendant, who afterwards indorsed the note while in the hands of the bank.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This action was brought by the First National Bank of Montgomery, against Samuel B. Marks, Jr., and was founded on two promissory notes, one for $1,600, and the other for $1,680; each of which was signed by W. C. Fellows as maker, payable to the order of the First National Bank of Montgomery, at its banking-house in the city of Montgomery, and indorsed by N. H. R. Dawson, J. B. Gaston, and the defendant, Samuel B. Marks, Jr. The note for $1,600 was dated at Selma, July 17th, 1882, and payable on the 1st January, 1884; and the defendant's name appeared on the back as the second indorser, being written between the names of Dawson and Gaston. The note for $1,680 was dated at Montgomery, January 4th, 1883, and payable on the 1st July, 1883; and the defendant's name appeared on the back as the third indorser, being written below the names of both Dawson and Gaston. The last note had been given in renewal and extension of a former note for $1,600, which was dated at Selma, July 17th, 1882, and payable on the 1st January, 1883; and on which the parties' names appeared in the same order as on the new note. Each of said notes was duly protested for non-payment. The complaint contained four counts, two on each note; the first declaring against the defendant as a maker of the note, with Fellows, Dawson and Gaston, and the second as indorser of a note made by Fellows. The defendant pleaded, in short by consent, *non assumpsit*, and want of consideration; and he also filed a special plea, which averred, in substance, that his indorsement was made without consideration, and solely for the accommodation of said W. C. Fellows, and was procured by the fraud of said Fellows, in concealing from him the fact, of which he was ignorant at the time, that the indorsement of said Dawson

[Marks v. First National Bank.]

was not, as it appeared on the back of said notes, that of a first indorser, who would be liable as such to subsequent indorsers, but was made subject to the condition that two other persons should become bound as co-sureties equally with him, and that the notes were delivered to the bank by said Fellows in violation of this condition. Issue was joined on all of these pleas.

The following are the material facts of the case, as shown by the bill of exceptions, which purports to set out all the evidence introduced on the trial: W. C. Fellows was engaged in the city of Montgomery, in partnership with one Graham, in the business of buying and selling cotton; and at the close of the summer season in 1882, their partnership was indebted to the plaintiff bank, in the sum of about $6,400. Graham assumed and settled one-half of this indebtedness, and Fellows undertook to settle the other half, in anticipation of making new business arrangements for the next season; the bank agreeing to settle and extend the debt, at a low rate of interest, on good security being given. At that time, Fellows was negotiating with the defendant and Bernard Gaston, a son of J. B. Gaston, for the formation of a partnership between them in the business of buying and selling cotton; and a partnership was consummated between them, under written articles dated August 1st, 1882. Fellows went to Selma, where Dawson resided, and procured his indorsement in blank of the two notes for $1,600 each; but this indorsement was made, as Fellows and Dawson each testified, on the express condition, that the notes should not be used until Fellows had procured the indorsement of two other solvent persons, who should be bound jointly and equally with Dawson as co-sureties. Dawson testified, also, "that when Fellows applied to him to indorse said notes, and when he indorsed them, he was not aware that Fellows intended to use them in paying an old debt to the bank, nor that Fellows was indebted to the bank at all; but that Fellows said he wanted to use these notes to make necessary arrangements with the bank to enable him to carry on the business he was about to engage in with defendant (Marks) and young Gaston." Fellows took the note to the bank, and stated to Dr. Baldwin, the president, as the latter testified, "that he had promised, though Dawson did not require it, to get two other names on the notes with him," and that he would procure the names of said Gaston and the defendant; and the notes were delivered to the bank on the 27th July, 1882, and a receipt given acknowledging settlement of Fellows' indebtedness, and releasing him from all further liability on account of it. "As to whether the plaintiff was informed, before receiv-

ing said notes, of the condition of Dawson's indorsement, the evidence was conflicting."

Baldwin testified, also, "that the bank took the notes on the faith and condition of said promise by Fellows that defendant and Gaston would indorse them." The defendant objected to the admission of this evidence, "unless it was shown that he knew of, or authorized such promise by Fellows;" and he excepted to the overruling of his objection. W. L. Chambers, the cashier of the bank, who was one of the executive committee of directors, "testified that he told Fellows, prior to the taking of said notes by the bank, that the only terms on which his indebtedness to the bank would be extended was upon his giving the names of defendant and said J. B. Gaston, in addition to said Dawson's name on said notes." The defendant objected to the admission of this evidence, "as illegal and improper, unless it was shown that he was present at the time, or was informed thereof;" and he excepted to the overruling of his objection.

It was shown, also, that Fellows obtained the notes from the bank, a few days after the 1st August, procured the signatures of Gaston and the defendant, and then returned them to the bank; but he did not disclose to either of them the condition annexed by Dawson to his indorsement. "Both the defendant and said J. B. Gaston testified, that their signatures on said notes were entirely for the accommodation of said Fellows, and without any other consideration whatever to them; that their signing said notes was an incident of said new partnership relation, but no condition or stipulation thereof, though they would not have signed the same as indorsers, if the partnership had not been agreed on; that Fellows asked it of them as a favor, and they consented to it as such, after inquiring and being satisfied both as to the solvency of Dawson and his liability to them in the event of loss by the suretyship." It was shown, also, "that neither the defendant nor said Gaston, at the time they signed said notes, had any knowledge or information whatever that said notes had been already negotiated and passed to said bank, or that Fellows had promised that their names should be placed thereon; and it was shown that neither of them had given Fellows any authoirity whatever to make any such promise or representation to said bank; nor did they agree to indorse said notes until after the formation of said partnership on the 1st August, 1882." It was shown, also, that when the first note matured, Dawson indorsed the new note, on the same condition as before, and on the representation of Fellows that Gaston and the defendant had signed the original notes as co-sureties with him, and would so sign the new note; and that Gaston and defendant indorsed the new note, under similar circumstances as before, in ignorance of this condition.

[Marks v. First National Bank.]

The defendant requested the following charges in writing :

"1.  If the defendant signed his name on the back of the notes sued on, after and under Dawson's, for the accommodation of Fellows, without an agreement to be liable as co-surety and jointly with Dawson for any loss, such signing would be no compliance with the conditions of Dawson's indorsement; that, in such case, the liability of the indorsers is successive, and not joint.  And if defendant's indorsement was procured by Fellows, for his accommodation, upon the exhibition of Dawson's previous indorsement, and without disclosing that such indorsement was restricted and conditional, and when in fact it was restricted and conditional, as shown in the evidence of Dawson ; then defendant's indorsement would be regarded as made on the representation of Dawson's unconditional indorsement, and would thus be fraudulently obtained.  And if plaintiff afterwards acquired said notes from Fellows, defendant would not be liable to plaintiff on said indorsement.

"2.  If the plaintiff discounted the original notes for Fellows on the 27th July, 1882, with Dawson's name on them as indorser, and if Dawson signed his name on the conditions shown in his evidence; then the plaintiff could not recover against Dawson, unless there was then two other persons' names on said notes in form, or under some agreement to make them joint (and not successive) sureties for Fellows ; and the plaintiff could not recover against either of the two subsequent accommodation indorsers on said notes, if their indorsements were procured by Fellows without a disclosure and without information that Dawson's indorsement was restricted and conditional; and a renewal of one of these notes, in the same form, by the same persons, indorsed under like conditions by Dawson, and by the subsequent accommodation indorsers in ignorance of said defenses against the original notes, would stand on the same footing.

"3.  The possession of the notes by Fellows, payable to the bank, and indorsed by third persons, before going into the hands of the payee, was notice to the bank that the indorsements were for accommodation ; and if the defendant's indorsement was obtained by Fellows without disclosing the condition on which Dawson gave his indorsement (if he did indorse on the condition shown by his evidence), and if there was no agreement for the indorsers to be co-sureties with Dawson, and if the defendant indorsed for the accommodation of Fellows, in ignorance of the condition of Dawson's indorsement, and if the plaintiff took the notes from Fellows,—then the plaintiff can not stand, as against the defendant, as a *bona fide* purchaser for value in the due course of trade.

"4. If Dawson indorsed the said notes purely for the accommo-

dation of Fellows, and upon the condition and agreement shown in the evidence of Dawson ; and if Fellows procured the defendant to indorse said notes for his accommodation, after Dawson, and under his name, without disclosing to defendant the condition and terms upon which Dawson had given his indorsement, and without any agreement between the indorsers for their joint liability with Dawson ; the procurement and use of defendant's indorsement under the facts was a fraud upon him, and also upon said Dawson, and defendant would not be liable on his said indorsement, to any person taking said notes from Fellows, in the form in which they were taken, even though full value was paid for said notes, and though the person taking them had no actual knowledge of said frauds.

"5. A purchase by the payee, from the maker, of a paper made and indorsed like the notes sued on, is, from the form of the paper, charged with implied notice of all the facts and circumstances under which the indorsements were made, and subject to all the defenses the indorsers may have.

"6. If Dawson,. Gaston and the defendant indorsed the $1,600 note sued on for the accommodation of Fellows, and the bank took it from Fellows, then the bank took it subject to any defense of fraud on the part of Fellows in obtaining the defendant's indorsement, whether the bank had any notice of such fraud, other than the notice disclosed by the form of the paper itself, or not.

"7. And if the renewed note was given under like circumstances, and the renewal was given in ignorance of any defense to the original note, then the renewal note would stand on the same footing."

The court refused each of these charges, and the defendant excepted to their refusal; and he here assigns as error the refusal of these charges, and the admission of the evidence to which he reserved exceptions.

GUNTER & BLAKEY, W. L. BRAGG, and THOS. H. WATTS, for appellant, made the following points: (1.) Dawson's indorsement of the notes was restricted and conditional, and Fellows had no authority to deliver or use them without a compliance with that condition; and the notes having been used in violation of that condition, there could be no recovery against Dawson.—*Guild v. Thomas,* 54 Ala. 414; *Wright v. Lang,* 66 Ala. 389; *Dawson v. Bank,* 78 Ala. 67; *Bibb v. Reid,* 3 Ala. 88; *Robertson v. Coker,* 11 Ala. 466; *May v. Robertson,* 13 Ala. 86. (2.) The defendant and Gaston did not sign as co-sureties with Dawson, but as second and third indorsers, whose liability was secondary to his, and dependent upon it. Dawson's engagement, if the condition had been written above his name, would

have read, "I authorize Fellows to deliver this paper, when (and only when) two other solvent persons sign it as co-sureties with me;" and the contract of the others, with legal implications expressed in words, was, "This paper may be delivered as to us, when it can be delivered as to the previous parties;" or, "We are willing to become successively, after Dawson, liable for Fellows' debt." Dawson never having been bound at all, the secondary liability of the other parties never attached. The use of the note by Fellows, without disclosing the conditional character of Dawson's indorsement, was a fraud on the other parties, as well as on Dawson, which is available as a defense to an action on the notes, except in the case of a *bona fide* holder of commercial paper, acquiring it before maturity, and without notice.—*McKenzie v. Br. Bank*, 28 Ala. 609; *Mauldin v. Br. Bank*, 2 Ala. 513; *Carlisle v. Hill*, 16 Ala. 405; *Noble v. Walker*, 32 Ala. 459; *Wallace v. Br. Bank*, 1 Ala. 565; *Saltmarsh v. P.& M. Bank*, 14 Ala. 668; *Blackman v. Lehman, Durr & Co.*, 63 Ala. 550; *Tyree v. Lyon*, 67 Ala. 1; *Fenouille v. Hamilton*, 35 Ala. 319; *Miller v. Boykin*, 70 Ala. 469; *Connerly v. Insurance Co.*, 66 Ala. 434; *Boykin v. Bank of Mobile*, 72 Ala. 292; *Insurance Co. v. Quinn*, 73 Ala. 560; and authorities first above cited. (3.) The notes are not commercial paper, and the plaintiff can not claim protection against the defense here set up. The policy of the law is against paper being commercial, and protection is only extended to paper which contains every essential requisite of negotiability.—*Blackman v. Lehman, Durr & Co.*, 63 Ala. 550; 63 Ala. 626. That a note is made payable in bank, only gives it one of the requisites of negotiability. Accommodation paper is not taken in the due course of trade, and a person who takes it, with knowledge of its character, takes it subject to all defenses arising out of prior rights or equities, except as to the want of consideration. The bank took the notes from the maker, payable to itself; and without its indorsement, they could not become negotiable. Being taken from the maker, and out of the usual course of trade, the bank can not claim protection, such as is extended to the holder of commercial paper.—*Craddock v. Van Ness*, 10 Amer. Rep. 256; *Roxborough v. Messick*, 6 Ohio St. 448; *Stall v. Catskill Bank*, 18 Wend. 478; 50 N. Y. 158; *Hullum v. State Bank*, 18 Ala. 807; *Tiller v. Shearer*, 20 Ala. 596; 1 Amer. Rep. 71; 29 Mich. 358; *Thomas v. Jennings*, 5 Sm. & Mar. 629; *Gookin v. Richardson*, 11 Ala. 892; 2 Brock. 41. As a purchaser from the maker, of accommodation paper, the plaintiff did not acquire the legal title, but took the notes subject to all equitable defenses. There is no such such thing as a *bona fide* purchase of an equity, entitled to protection against prior equi-

[Marks v. First National Bank.]

ties.—*Boone v. Chiles*, 10 Peters, 177; 67 Amer. Dec. 608; 8 Ala. 927.

TROY, TOMPKINS & LONDON, *contra*.—(1.) The plaintiff took the notes in payment of a pre-existing debt, in the ordinary course of business, and is a purchaser for value.—*Day v. Thompson*, 65 Ala. 269; *Mayberry v. Morris*, 62 Ala. 113; Story on Prom. Notes, § 195. (2.) The defense attempted to be set up, founded on the alleged fraud or fraudulent conceal- ment of Fellows, can not prevail against a purchaser who was ignorant of it, although he knew that the notes were indorsed for the accommodation of the maker. . The New York rule, as to irregular indorsements, does not prevail with us, and it has been repudiated in other States.—*Findlay v. State Bank*, 6 Ala. 244; *Milton v. De Yampert*, 3 Ala. 648; *Price v. Lav- ender*, 38 Ala. 389; *Hooks v. Anderson*, 58 Ala. 238; *Roths- child v. Grix*, 31 Mich. 150; *Helms v. Wayne Agr. Co.*, 73 Ind. 325; *Anderson v. Ware*, 71 Ill. 20; 34 Ind. 251; *Dunn v. Weston*, 71 Me. 270. (3.) That the evidence of Bald- win and Chambers was properly admitted, see Wharton's Ev. § 259; *Walker v. Forbes*, 25 Ala. 139; *Gandy v. Humphries*, 35 Ala. 617.

SOMERVILLE, J.—The main question in this case, re- duced to its last analysys, is simply, whether, in the case of accommodation negotiable paper, the fraud of the maker, in pro- curing the signature of an accommodation indorser, is a good defense to a suit brought against such indorser by the payee, who knows the nature of the paper, but is ignorant of the fraud.

We are of opinion, upon fundamental principles of law governing the subject of commercial paper, that the defense can not be sustained.

1. Accommodation indorsers, beyond all doubt, are liable precisely to the same extent as if they had received value, when the paper upon which their names appear has come into the hands of a holder for value, who has taken it *bona fide*, before maturity, and without notice of any fraud or other equity, which would vitiate it. It is entirely immaterial that such purchaser was cognizant of the fact that the bill or note was founded on an accommodation transaction, and was, therefore, to this extent, without consideration as between the indorser and the maker. The obvious reason is, that the purpose of making the paper was to loan the credit of the accommodation indorser, or other surety, to the maker, or party for whose accommodation the paper is made, that he might obtain money or credit from a third person on the faith of it. Unless this

rule prevailed, it is easy to see how the circulation of accommodation paper would be so far frustrated as to destroy its use in commerce.—Chitty on Bills, pp. 80, 305; 2 Parsons Notes & Bills, p. 27; *Park Bank v. Watson*, 42 N. Y. 470. The rule, in other words, is, to use the language of Judge STORY, that "the parties to every accommodation bill hold themselves out to the public, by their signatures, to be absolutely bound to every person who shall take the same for value, as if that value were personally advanced to them, or on their account, and at their request."—Story on Bills, § 192.

This familiar principle is a full answer to the argument, that the notes in suit were obtained by the plaintiff from the maker, Fellows, and that this fact charged the plaintiff with a knowledge of the nature of the paper as being of an accommodation character.

2. That the notes were taken by the bank in payment of an antecedent debt, did not render it any the less a purchaser for value, in due course of business, than if it had advanced the money on the faith of the paper. Such transactions are constantly occurring among merchants, and it may, therefore, be said to be according to their usage. The notes were payable to the bank on their face, and of this fact the defendant was necessarily apprised, when he loaned Fellows the credit of his indorsement.—1 Parsons Notes & Bills, pp. 256–257; 2 Lead. Cas. 242; *Connerly v. Planters' Ins. Co.*, 66 Ala. 433; *Bank of Mobile v. Hall*, 6 Ala. 639. The case of *McKenzie v. Branch Bank*, 28 Ala. 606, cited and relied on so strenuously by appellant's counsel, is easily distinguishable from this case. Here, accommodation paper is taken in absolute payment of a pre-existing debt—there only as *collateral security* for such debt. In the former case, the holder, under our decisions, is a purchaser for value; in the latter, not.—*Miller v. Boykin*, 70 Ala. 469.

3. That the liability of the defendant was that of an indorser, is too well settled by the decisions of this court to admit of discussion. It is true that his name was written in blank on the back of the notes, before they had been indorsed by the payee, who never put them in circulation; and the indorsement was, therefore, what is commonly termed an irregular and imperfect one. But this was immaterial, as no effort is made to show by parol evidence, or otherwise, that the defendant, at the time of the indorsements, in any manner qualified or restricted his liability, so far as concerns the plaintiff, or contracted to assume, as between him and the plaintiff, any other liability than that of an indorser.—*Hooks v. Anderson*, 58 Ala. 238; *Price v. Lavender*, 38 Ala. 389; *Tankersly v. Graham*, 8 Ala. 251; *Jordan v. Garnett*, 3 Ala. 610; *Day v. Thompson*,

[Marks v. First National Bank.]

65 Ala. 269. The case raises no inquiry as to the circumstances under which irregular indorsements may be qualified by parol proof of the real contract between the parties litigant—who are here the payee and the indorser. As between the indorsers themselves, the inquiry might assume entirely another phase, which it is unnecessary for us to discuss.

4. This brings us back to the first inquiry, as to how far the alleged fraud practiced by the maker, whereby he obtained the consent of defendant to become one of his accommodation indorsers, is to affect the payee, who is entirely ignorant of it. The evidence shows that Dawson, the first indorser on the notes, made his indorsement upon the condition, that the maker, Fellows, was to obtain the names of two other responsible indorsers on the paper, before delivering it to the bank, such indorsers to be jointly liable with him. This condition was not communicated to the defendant, and this may be admitted to be a *suppressio veri*, which was a fraud in law. But the plaintiff was as ignorant of the alleged fraud as was the defendant, being an innocent purchaser of the legal title, before maturity; and for value. Why should the bank, then, be held responsible for a deception in which it had no participation? Its officers trusted to the paper, and the affirmed genuineness of the signatures, which were sufficient on their face to create a legal liability. They placed no special trust in any representations of the maker, as to the nature of the paper. The defendant, however, trusted the maker, by standing as his surety, and did not either inquire or inform himself as to the terms upon which Dawson had indorsed the notes. One giving currency to commercial paper, by indorsement, is understood, not only to assert the genuineness of all previous signatures, but also "the regularity of all such previous transactions as he was bound to know."—2 Greenl. Ev. § 164. He was guilty of negligence, in this particular; and its consequences should rather be visited on him, than upon one who has parted with value on the faith of his indorsement.—*Anderson v. Warne*, 71 Ill. 20; s. c., 22 Amer. Rep. 83. Fellows, moreover, was, to a certain extent, the agent of the defendant to deliver the note to the bank—without special instructions, and without the imposition of any conditions or terms of delivery. Here, again, was the reposing of confidence; and the rule is, that where one puts trust and confidence in a deceiver, it is more reasonable that he should be the loser than a stranger, who deals with him with him without any relations of confidence. The case can scarcely be stronger, than if the notes had been indorsed to be used for some special purpose, and had been fraudulently misappropriated to another purpose by the maker, without knowledge on the part of the payee of such restriction

or misappropriation. Yet, in such a case, it has been often held, that a *bona fide* holder for value can recover of the accommodation indorser, although he knows that the paper is founded on an accommodation transaction.—*Merchants' Bank v. Comstock*, 14 Amer. Rep. 169; *Quinn v. Ward*, 5 Amer. Rep. 284; 1 Parsons Notes & Bills, p. 279, *note* (u); 2 *Ib.* p. 27. So, it is decided, where a surety fixes his signature after others which are forged, and while it is yet in the hands of him for whose benefit the note is drawn, that this would be no such fraud as would vitiate the paper in the hands of an innocent holder for value, who was not privy to the fraud.—*Selser v. Brooks*, 3 Ohio St. 302. In *Helms v. Wayne Agricultural Co.*, 73 Ind. 325, where the name of one of the makers of a note was forged, and another signed it as surety only, under the belief that the forged name was genuine, he was held to be bound nevertheless to the payee, who was without notice of the forgery. *A fortiori*, should this be true, in view of the fact that such indorsement is, in a certain sense, a separate and distinct contract with the payee, or holder, by which it is agreed that every indorser severally will pay the debt, if by the use of due diligence it can not be collected from the maker. The case of *Anderson v. Warne* (71 Ill. 20; s. c., 22 Amer. Rep. 83), cited *supra*, is an authority for the proposition, that where a surety is induced by the fraud of the maker to sign a note, this fact constitutes no defense to an action brought by the payee on the note, unless the latter's participation in the fraud is proved; and this principle, we think, is both reasonable and just, at least in cases of commercial paper, which is held by a purchaser for value without notice of the fraud.—*Helms v. Wayne Agricultural Co.*, 73 Ind. 325; *Farmers' & Traders' Bank v. Lucas*, 26 Ohio St. 385; 2 Randolph on Commercial Paper, § 919.

5. The principle decided in *Guild v. Thomas*, 54 Ala. 414; s. c., 25 Amer. Rep. 703, and *Bibb v. Reid*, 3 Ala. 88, touching the liability of sureties on bonds conditionally delivered, has no application to commercial paper in the hands of an innocent purchaser, and acquired before maturity, and, therefore, furnishes no rule for our guidance in this case.—1 Daniel Neg. Instr. (3d Ed.) § 856; *Deardorff v. Foresman*, 24 Ind. 481; *Guild v. Thomas, supra;* 25 Amer. Rep. 710, *note; First Nat. Bank v. Dawson*, 78 Ala. 67.

6. But one other point remains to be considered, and this arises on an objection to a statement of the witness Chambers, who, as an officer and agent of the bank, clothed with unquestionable authority, informed Fellows, during the progress of his negotiation with the bank, for its taking of the notes, that they would not be taken without the names of Marks and

[Marks v. First National Bank.]

Gaston as indorsers. It is objected, that this conversation was not known to defendant Marks, and was not, therefore, admissible against him. The answer to this objection very obviously is, that this statement was part and parcel of the agreement between Fellows, the maker of the notes, and the bank, as payee, constituting one of the conditions on which the paper would be received, and that the defendant became connected with it by afterwards indorsing the notes, thus literally carrying the agreement into execution. It was *res gestæ* to the main fact, and illustrative of its very essence. It was admissible on another ground. The notes were in the possession of the bank, or payee, when Marks signed them. Unless the signing had been executed pursuant to a previous agreement to that effect, the contract of indorsement on Marks' part would have been without consideration. The testimony of Chambers was, for this reason alone, relevant, to show a consideration for defendant's assumption of liability, the paper not being complete and perfect in the absence of his signature, for the giving of which there had been an express stipulation.—*McNaught v. McClaughry*, 42 N. Y. 22.

There is, in our opinion, no error in the record, and the judgment must be affirmed.

CLOPTON, J., *not sitting*.

NOTE BY REPORTER.—On a subsequent day of the term, in response to an application by appellant's counsel for a rehearing, the following opinion was delivered:

STONE, C. J.—There is an able and elaborate argument for a rehearing in this cause, but I think it misapprehends both the force of our statute, and the rulings made by this court on irregular indorsements. The statute declares—Code of 1876, § 2094—that "Bills of exchange and promissory notes payable in money at a bank or private banking-house, or a certain place of payment therein designated, are governed by the commercial law." The notes sued on in this case are, on their face, made payable to the order of the First National Bank, at its office in the city of Montgomery. This, by the terms of the statute, constituted them commercial paper. And the notes, on their face, are made payable to the said bank. When the bank acquired the ownership, it acquired the legal title, and the right to sue in its own name, not by virtue of the indorsement, but by the very face of the notes. This difference distinguishes this case from those brought on bills of exchange having irregular indorsements not vesting the legal title in the holder.

36

[Marks v. First National Bank.]

The notes sued on in this case, as we have seen, are on their face promissory notes made by Fellows, payable to the First National Bank of Montgomery. The names of the appellant and two others appear on the back of them as indorsers. Under some very able judicial systems, such indorsements constitute the indorser a surety of the maker, made liable to the same extent, and by the same form of proceeding, as if he had signed his name as co-maker with the principal.—*Rey v. Simpson,* 22 How. U. S. 341; *Chaddock v. Vanness,* 35 N. J. Law, 517; s. c., 10 Amer. Rep. 256. A different rule prevails in Alabama, and has prevailed so long, that we have no wish to disturb it. Speaking of such indorsements, it was said in *Price v. Lavender,* 38 Ala. 389, " that unexplained, they impose a liability in favor of the person to whom the indorsement is made, against the indorser, which is strictly analogous to the liability upon a regular indorsement."—*Hooks v. Anderson,* 58 Ala. 238. Applying that principle to this case, timely notice of non-payment by the maker was required to be given to the indorser, as the means, and only proper means of fixing the latter's liability. That is shown to have been done in this case.

It is contended for appellant, that because Fellows, the maker of the notes, carried them to the bank, and himself received the benefit of their discount or purchase, this was itself notice to the bank that the indorsers were mere accommodation parties; and lets in proof of the violation of the authority and restricted power which had been confided to him, Fellows, by Dawson, the first indorser. If the acceptor of a bill of exchange, or maker of a promissory note, himself present it at a bank, procure its discount, and receive the money, the proceeds of the discount, this is certainly notice to the bank that the other names on the paper are accommodation parties. What duties such notice or knowledge casts on the bank are not defined with that definiteness and uniformity we could desire.—*Mauldin v. Branch Bank,* 2 Ala. 502; *McKenzie v. Branch Bank,* 28 Ala. 606; *Saltmarsh v. Planters & Mer. Bank,* 14 Ala. 668, and cases cited. It is very clear, under these authorities, that the offer of a paper for sale or discount, if made by the party primarily liable for its payment, is evidence that the paper represents no existing debt, but is only an offer to incur one. The purchase of such paper at a greater rate of discount than eight per cent. is usurious.

Suppose, however, some of the makers of the paper signed it for the accommodation of the principal debtor, and the bank knew such was the case, what difference can that make? A consideration moving to the principal upholds not only his promise, but that of the surety or indorser, who signs before

[Marks v. First National Bank.]

the negotiation of the paper.—*Rutledge v. Townsend*, 38 Ala. 706.

The principle we have been discussing has nothing to do with this case. The notes were made to be discounted or purchased, and were purchased, not with money paid to Fellows. No money was to be paid to him, and none was paid to him. They were made to be used as an extension and novation of a debt already due from Fellows to the bank. Giving new notes, with additional parties bound, having several months to run, and the surrender of the evidence of the old debt, constituted a novation, and the creation of a new debt, the surrender of the old note being the consideration for it. It is not pretended the new notes are greater in amount than the debt taken up, with interest added. The surrender or cancellation of a debt is, equally with money paid, a valuable consideration parted with, which will uphold as *bona fide* a purchase made of which it is the consideration.—*Spira v. Hornthall*, 77 Ala. 137.

Nor is there anything in the fact that Fellows himself carried the notes to the bank. He, of all men, was the person to carry them, for with them he was negotiating a settlement, and did settle a debt he owed the bank. Being the debtor, it was his duty to make payment, and he only discharged that duty when he delivered the new notes in discharge of the old. This fact distinguishes this case from *Mauldin v. Branch Bank, supra*, and the cases which follow it. And it would seem there was no occasion for invoking the doctrine of presumption in this case. The entire transaction shows that every one connected with it, including the bank, knew that Fellows was the debtor, and the appellant only his surety. An indorser of a note is a surety for the maker, who is the principal debtor. This is particularly so, when the indorsement is for accommodation. 2 Dan. Neg. Instr., § 1303. Why resort to presumption, when the admitted fact stands prominently out?

To summarize: The notes were commercial paper on their face. The bank purchased them in the regular course of its business, paying a present, adequate consideration for them, in the surrender of the old debt on Fellows. The notes were carried to the bank, and the negotiation and sale made by Fellows, the most natural person in the world to perform such service. And the liability of the appellant being the same as that of a regular indorser of commercial paper, that liability has been fixed by the failure of his principal to pay, and timely notice thereof given to him.

I fully concur in the argument and conclusions of my brother SOMERVILLE, and the petition for re-hearing is overruled.